

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUN 1 3 2000**

**Michael N. Milby**
**Clerk of Court**

| | | |
|---|---|---|
| JOEL FLORES, Individually and On Behalf | * | |
| of All Others Similarly Situated | * | |
| | * | |
| VS. | * | **CIVIL ACTION NO. B-00-053** |
| | * | |
| CERTUS HEALTHCARE, L.L.C.; | * | |
| NOVOPHARM LIMITED; DAVID | * | |
| RODRIGUEZ; DR. ASHOK K. GUMBHIR; | * | |
| and NOVOPHARM HOLDINGS, INC. | * | |

## DEFENDANT NOVOPHARM HOLDINGS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW NOVOPHARM HOLDINGS, INC., Defendant herein, and files this its Motion for Summary Judgment, pursuant to F.R.Civ.P. 56, and in support thereof would show the Court as follows:

## I.

## BACKGROUND

On March 1, 2000 Plaintiff Joel Flores filed this purported class action on behalf of "all policyholders, beneficiaries and members of any health insurance plan or HMO from Certus Healthcare, L.L.C. from January 1, 1998 to the present" against Certus Healthcare, L.L.C., Novopharm Limited, David Rodriguez, Dr. Ashok K. Gumbhir, and Novopharm Holdings, Inc.

Plaintiff purchased Certus health care insurance in February 1999 and attempted to purchase a "Pulmo-Aide" treatment for his son on February 22, 1999. Plaintiff states that he went to eight pharmacies, none of which accepted his Certus insurance. Plaintiff thereafter canceled his coverage, within fifteen days of obtaining same.

Plaintiff states in Paragraph V of his Original Petition that Certus Healthcare, L.L.C. "is owned by Defendants David Rodriguez ("Rodriguez"), Dr. Ashok K.

Gumbhir ("Gumbhir") and Novorpharm Holdings, Inc."  Plaintiff also alleges in Paragraph V that Certus' marketing materials contained "false statements that created the illusion that Certus was not only financially sound, but that Defendant Novopharm Limited would lend its billions of dollars to 'improve the overall healthcare of South Texas.'"

Based on these alleged misrepresentations, Plaintiff alleges causes of action against Defendants Novopharm Limited and Novopharm Holdings, Inc. for violations of RICO, the Texas Deceptive Trade Practices Act, fraud, and negligent misrepresentation. Plaintiff alleges in Paragraph VI of Plaintiff's Original Petition that Defendant Novopharm Limited "is vicariously liable for the misfeasance and malfeasance of Defendant Certus because Defendant Certus is Defendant Novopharm Limited's ostensible agent."  Plaintiff further alleges that "Defendants David Rodriguez, Dr. Ashok K. Gumbhir, and Novopharm Holdings, Inc. are vicariously liable for the misfeasance and malfeasance of Defendant Certus as members/shareholders of Certus because Certrus is, and at all material times was, undercapitalized."

Defendant would show that Plaintiff has failed to state a cause of action against Novopharm Holdings, Inc., and therefore, summary judgment should be granted.

## II.

## CREATION AND FUNDING OF CERTUS HEALTHCARE, L.L.C.

Novopharm Ltd.'s business is the wholesale manufacture and distribution of prescription and non-prescription pharmceuticals. Its pharmaceutical operations in the United States are conducted by its subsidiaries which are owned solely by Novopharm Holdings, Inc., a Delaware corporation. Each subsidiary is operated through a separate legally incorporated entity, each with its own board of directors, officers, and employees.

Certus Healthcare, L.L.C. was a totally unrelated business venture, formed as a Texas limited liability company to engage in business as a health maintenance

organization. Neither Novopharm Ltd. nor Novopharm Holdings, Inc. solely owned or controlled Certus. Certus was considered to be an investment in an entirely new field of business. The creation of Certus Healthcare, L.L.C. in 1995 came after weeks of negotiation and arms-length discussions between David Rodriguez and the Chairman of Novopharm, Ltd. On November 30, 1995, Total Healthcare Plans (Mr. Rodriguez's company) and Novopharm Ltd. entered into a Contribution and Subscription Agreement, which detailed the rights, duties, and obligations of the parties in the formation and capitalization of Certus Healthcare, L.L.C.

Novopharm Ltd. agreed to contribute $1,400,000 to the joint venture for a 51% ownership interest. Total Healthcare Plans agreed to contribute $150,000 for a 49% ownership interest. Novopharm Ltd. also agreed to make additional capital contributions up to $1,100,000 in the initial operation of the HMO, and Total Healthcare Plans agreed to contribute $1.00 for every $10.00 contributed by Novopharm Ltd. Novopharm Ltd. also agreed to make, and did make through Novopharm Holdings, Inc., a cash deposit of $500,000 with the Texas Department of Insurance in order to comply with state licensing requirements. Further, in 1996 at the demand of the Texas Department of Insurance, Novopharm Holdings guaranteed its commitment of an additional $3,000,000 in funding. Total Healthcare Plans also agreed to contribute $260,00 in order to meet capital needs of the HMO through 1997. The Operating Agreement was also amended, at the request of the Texas Department of Insurance, to state that neither member would have the right to withdraw or reduce its capital contributions nor to take profits from the business which might jeopardize the HMO's licensing or status with the Texas Department of Insurance.

On December 29, 1995 Novopharm Ltd. transferred and assigned all of its rights and interests in the new HMO to Novopharm Holdings, Inc. On that date, Total Healthcare Plans and Novopharm Holdings filed a Certificate of Organization with the Texas Secretary of State, incorporating the new joint venture, and also entered into a

limited liability company operating agreement. The initial board of directors included David Rodriguez, Dr. Ashok K. Gumbhir and Novopharm Holdings, Inc. Mr. Rodriguez became President and Chief Executive Officer of Certus and was responsible for hiring other management level employees and running the business.

At no time was Novopharm Ltd. a member, shareholder, officer, director or equity owner in Certus, nor did it participate in the management or operations of Certus. Novopharm Holdings, Inc. did own a share of Certus; however, it did not participate in the management of the company. Rather, its sole role was as an investor of the company.

The Operating Agremeent was amended again in May of 1998 and provided in part that Novopharm Holdings would guarantee the commitment of additional funds to Certus for the "purpose of meeting the minimum anticipated requirements of the HMO and for the purpose of preserving the HMO's financial viability through a period ending December 31, 1999." At this time Novopharm Holdings' contributions to Certus exceeded $6,900,000. By December 1998 its contributions totaled $13,850,000. Novopharm Holdings continued to make capital contributions to Certus on an as-needed basis, totaling $26,414,256 as of December 1999.

Certus was sold to Certus Health Management, Inc., a subsidiary of Wellcare HMO, Inc., in November 1999. Novopharm Holdings received nothing for its investment, but agreed to contribute an additional $5,400,000 to cover Certus' existing liabilities and potential claims at the time of its sale to Wellcare.

## III.

## SUMMARY JUDGMENT STANDARD

To prevail on summary judgment, the movant must "show that there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); F.R.C.P. 56. To

successfully resist a summary judgment motion, the non-moving party must produce sufficient evidence to establish the existence of every essential element of the claims on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is therefore "mandate[d]" if the *non-moving party* fails to come forward with "specific" facts to support an essential element of its claim. *Celotex*, 477 U.S. at 323-24. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing a proper motion for summary judgment are insufficient to overcome the motion. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Accordingly, Defendant's initial burden is to show, based on the facts or the law, that one or more elements of Plaintiff's claims cannot be established. As set forth below, there is *no* evidence to Plaintiff's allegations that Novopharm Holdings, Inc. should be held vicariously liable for any actions/inactions of Certus.

### IV.

### ARGUMENT AND AUTHORITIES

The Texas Limited Liability Company Act, Tex. Rev. Civ. Stat. Art. 1528n §1101 et seq., provides the authority for limited liability companies' existence. A limited liability company, such as Certus Healthcare, L.L.C., has the powers of a corporation under the Texas Business Corporation Act and those of a limited partnership under the Texas Revised Limited Partnership Act. Tex. Rev. Civ. Stat. Art. 1528n §2.01. One of the benefits of a limited liability company is that it offers limited liability to its investors or "members."

Under the Texas Business Corporation Act, Art. 2.02, the right "to sue and be sued, complain and defend, in its corporate name" is one of the powers granted to such entities. Texas Business Corporation Act, Art. 2.02. A member of a limited liability company is not liable for the debts, obligations, or liabilities of a limited liability company. Tex. Rev. Civ. Stat. Art. 1528n, Art.4.03A. Further, the statute provides that

"a member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member's right against it or liability to the limited liability company." Tex. Rev. Civ. Stat. Art. 1528n Art. 4.03C.

In the case at bar, Plaintiff has named Novopharm Holdings, Inc. as a defendant, alleging only that, as a member of Certus, it is vicariously liable for the misfeasance and malfeasance of Defendant Certus "because Certus is, and at all material times was, undercapitalized." Defendant would first show the Court that pursuant to Tex. Rev. Civ. Stat Art. 1528n, Novopharm Holdings is not a proper party to this lawsuit. Further, Defendant would show that it contributed over $26,000,000 to Certus over a four year period prior to the sale, and after the sale an additional $5,400,000 was contributed to cover existing liabilities, and therefore, there is no basis for Plaintiff's assertion that Certus was undercapitalized.

## V.

## SUMMARY JUDGMENT EVIDENCE

The following evidence is attached hereto and incorporated by reference for all purposes:

Exhibit A is a copy of the affidavit of Dan Youtoff.

## VI.

## CONCLUSION

For the foregoing reasons, Defendant Novopharm Holdings, Inc. requests that the Court set this Motion for hearing, grant this Motion for Summary Judgment as to all of Plaintiff's causes of action against Defendant Novopharm Holdings, Inc., and for such other and further relief as Defendant may show itself justly entitled to receive.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
       Norton A. Colvin, Jr.
State Bar No. 04632100
Federal No. 1941
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Ph:    (956) 542-7441
Fax:   (956) 541-2170

John R. Wallace
Paul P. Creech
Wallace, Creech & Sarda, L.L.P.
Post Office Box 12085
Raleigh, North Carolina 27605
Ph:    (919) 782-9322
Fax:   (919) 782-8113

ATTORNEYS FOR DEFENDANT,
NOVOPHARM HOLDINGS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Novopharm Holdings, Inc.'s Motion for Summary Judgment was served upon all counsel of record, to-wit:

> Michael R. Cowen
> Zavaletta & Cowen
> 603 East St. Charles Street
> Brownsville, Texas 78520
> Attorneys for Plaintiff
>
> John Ventura
> Anthony Carrabba
> Law Offices of John Ventura, P.C.
> 7 North Park Plaza
> Brownsville, Texas 78521
> Attorneys for Plaintiff
>
> Jeffrey D. Roerig
> Roerig, Oliveira & Fisher, L.L.P.
> 855 West Price Road, Suite 9
> Brownsville, Texas 78520
> Attorneys for Defendants Certus Healthcare, L.L.C., David
> Rodriguez, and Dr. Ashok K. Gumbhir

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant to the Federal Rules of Civil Procedure, on this the 13th day of June, 2000.

Norton A. Colvin, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and<br>On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CERTUS HEALTHCARE, L.L.C.;<br>NOVOPHARM LIMITED; DAVID<br>RODRIGUEZ; DR. ASHOK K. GUMBHIR<br>and NOVOPHARM HOLDINGS, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. B-00-053<br><br>AFFIDAVIT OF DAN YOUTOFF |

I, Dan Youtoff, being first duly sworn hereby depose and say:

1.      I am a citizen and resident of Aurora, Ontario, Canada.  I am employed by Novopharm Limited, a defendant in this action ("Novopharm Ltd.").  My position with Novopharm Ltd. is Director of Treasury and Financial Services.  As such, my many duties and responsibilities relate to the financial affairs of Novopharm Ltd. and its subsidiary companies, one of which was Certus Healthcare, L.L.C. ("Certus").  Such duties and responsibilities have included:  assisting with internal financial statements, approving payment of expenses, capital contributions, loans or advances on behalf of Novopharm Ltd. to its subsidiary companies, monitoring operations of subsidiaries, supervising the collection of and accounting for receipts and deposits for the parent company, arranging financing, analyzing business acquisitions, assisting with financial budgets, tax planning and preparing business forecasts, coordinating annual audits with outside accountants, reviewing tax returns, reviewing legal agreements from an accounting perspective, and supervising a staff of over 30 employees within the accounting/finance department of Novopharm Ltd.  I am also regularly involved in other business and tax planning meetings with other senior executives of Novopharm Ltd. and often consult with inside and outside professionals including lenders, accountants and lawyers in performing my job.

2.      Prior to joining Novopharm Ltd. in July, 1996, I was employed as a Chartered Accountant (equivalent to CPA in the United States) with Price Waterhouse (now

1

"PricewaterhouseCoopers") in Toronto, Canada. My primary client was Novopharm Ltd. My professional engagement with Novopharm Ltd. gave me intimate knowledge and experience concerning its finances, taxes and business operations. As a result of my expertise and close working relationship with the management of Novopharm Ltd. I was hired by Novopharm Ltd. as an employee to perform many of the same duties which I was previously performing as an independent CA. My years of employment with Novopharm including my prior time with the company as an independent CA through the date hereof is approximately 14 years.

3.      I graduated from Ryerson University, Toronto in 1983 with an accounting/finance degree. After graduating, I joined Price Waterhouse and in 1987 I achieved my status as Chartered Accountant.

4.      I am familiar with the lawsuit filed by Joel Flores against Certus, Novopharm Ltd., Novopharm Holdings, Inc. (hereinafter "Novopharm Holdings"), David Rodriguez and Dr. Ashok Gumbhir. More specifically, I have read the Petition in which plaintiff alleges that Novopharm Ltd. is vicariously liable for the acts of defendant, Certus, on the theory of ostensible agency. I further understand that the plaintiff has alleged that Novopharm Holdings is vicariously liable for the acts of defendant, Certus, on the theory that Certus was undercapitalized.

5.      Certus was neither the agent of its ultimate parent, Novopharm Ltd., nor was Certus undercapitalized.

6.      Novopharm Ltd.'s core business is the wholesale manufacture and distribution of prescription and non-prescription pharmaceuticals with sales internationally. Part of its business includes research and development for new products as well as biomedical and biotechnical research aimed in finding cures for many forms of cancer. Its principal office locations are in Toronto, Canada; Godollo, Hungary; Illinois, North Carolina and Florida, USA. Its pharmaceutical operations in the United States have been conducted by its subsidiaries which are owned solely by Novopharm Holdings, a Delaware corporation. Each of its separate business divisions for prescription and non-prescription manufacturing

2

and distribution has been operated through a separate legally incorporated entity, each having its own board of directors, officers and employees.

7.      Certus, however, was a new start-up company and an unrelated business venture. It was formed as a Texas limited liability company to engage in business as a health maintenance organization (HMO). Its business was not part of Novopharm Ltd.'s core business, and Novopharm Ltd. did not solely own or control that entity as it did its other subsidiaries. It was formed as a business proposition, promoted by a third party and was considered an investment by Novopharm Ltd. into an entirely new field or endeavor.

8.      In the fall of 1995, a business broker who was unsolicited by Novopharm Ltd. introduced Mr. David Rodriguez of Miami, Florida to Mr. Leslie Dan of Toronto, Canada.   Mr. Dan was at that time, and has remained at all times, the Chairman of Novopharm Ltd.  Mr. Rodriguez was seeking capital to start an HMO and had targeted the South Texas region as a viable market area.  Following arms-length discussions and weeks or longer periods of negotiations between Mr. Rodriguez and Mr. Dan, Novopharm Ltd. entered a Contribution and Subscription Agreement (the "Subscription Agreement") with Mr. Rodriguez' company, Total Healthcare Plans ("THCP").  The Subscription Agreement dated November 30, 1995 provided in significant detail the rights, duties and obligations of the parties regarding the intended formation and capitalization of a company which would engage in the HMO business.

9.      Prior to ever filing Articles of Organization with the Texas Secretary of State and certainly prior to obtaining all licenses to do business including the necessary approvals and license from the Texas Department of Insurance ("TDI"), Novopharm Ltd. agreed to contribute $1,400,000.00 to the joint venture for a 51% ownership interest.  THCP agreed to contribute $150,000.00 for a 49% ownership interest.   Based on its eventual assessment of initial operations, Novopharm Ltd. agreed to make additional capital contributions up to $1,100,000.00.   THCP also agreed to contribute $1.00 for every $10.00 contributed by Novopharm Ltd.

3

10.    In addition to the capital contributions which both parties made prior to commencing business, Novopharm Ltd. also agreed to make, and in fact did make through its subsidiary, Novopharm Holdings, a cash deposit of $500,000.00 with TDI in order to comply with one of many state licensing requirements.

11.    Soon thereafter, on December 29, 1995, Novopharm Ltd. transferred and assigned all of its rights and interests as set forth in the Subscription Agreement to Novopharm Holdings. On that same day, THCP and Novopharm Holdings with the assistance of a Texas lawyer caused a Certificate of Organization for the HMO to be filed with the Texas Secretary of State thus incorporating the new joint venture and thus availing itself certain rights and benefits of a corporate entity under Texas law. Also on December 29th, both Novopharm Holdings and THCP entered into a limited liability company operating agreement (the "Operating Agreement"). (The Certificate of Organization and Operating Agreement were originally signed in the name of Oasis Health Plans, LLC which later changed its name to Certus.)

12.    The initial board of managers or directors included David Rodriguez, Dr. Ashok K. Gumbhir and Novopharm Holdings. The Operating Agreement required that at least two managers be U.S. citizens, and Mr. Rodriguez and Dr. Gumbhir were both U.S. citizens. The Operating Agreement also stated that the U.S. managers would have authority and would be primarily responsible for the day to day management of Certus. Mr. Rodriguez became President and Chief Executive Officer of Certus. He was the principal officer in charge and was responsible for hiring other management level employees and for running the business generally. His employment is evidenced by a written employment agreement with Certus dated January 18, 1996 which preceded doing business with the public. Other written employment agreements were entered between Certus and other management level employees. With the help of lawyers, CPAs and other professionals who assisted in the planning stages of this new business, the owners, organizers, officers and employees sought to comply and in fact complied with all formal legal requirements material to the formation and continuing existence of Certus under Texas law.

13.    At no time was Novopharm Ltd. ever a member, shareholder, officer, director or equity owner in Certus, and at no time did it ever participate in the management or operations of Certus.

4

Although Novopharm Holdings was a member/owner, at no time did Novopharm Holdings ever participate in the day to day management of Certus. Its role was that of an investor, much like any shareholder of a corporation. Novopharm Ltd. and Novopharm Holdings did not engage in business in Texas and did not even have a presence in Texas and, therefore, could not be liable for the alleged acts of wrongdoing stated in the Petition.

14.    Prior to being licensed by TDI on September 12, 1996, and prior to commencement of business, Certus was informed by TDI that TDI would not approve the application for qualification as a licensed HMO unless Certus further proved that it had adequate financial support. In response to the notice or demands of TDI, Novopharm Holdings agreed to contribute (or to guarantee its commitment in such form satisfactory to TDI) a total of $3,000,000.00. THCP also agreed to contribute $260,000.00 in order to meet the capital and surplus needs of the HMO as projected through December 31, 1997. To further satisfy TDI, both Novopharm Holdings and THCP amended the Operating Agreement (the "First Amendment") stating that neither member would have the right to withdraw or reduce its capital contributions which might jeopardize the HMO's status with TDI. Additionally, both members agreed in writing not to take any profits from the business or other distributions which might jeopardize the HMO's licensing qualification and status with TDI. These stringent financial requirements and safeguards imposed by TDI on Certus is evidence of Certus' corporate existence and its financial solvency. It further confirms that TDI recognized Certus itself as the proper licensee doing business and not its owners by any law of agency as plaintiff theorizes.

15.    To my knowledge, the above referenced First Amendment was filed with or made available to the TDI. In light of the foregoing assurances from the owners and satisfactory compliance with the application process, the HMO was licensed by TDI on September 12, 1996. Soon thereafter, Certus began business. Its first policyholders were employees of Certus itself.

16.    In May of 1998, both Novopharm Holdings and THCP entered into a second amendment to the Operating Agreement (the "Second Amendment") which provided in part that Novopharm Holdings would contribute necessary funds in a form acceptable to TDI (or guarantee its commitment for

5

additional contributions to Certus) and that such additional contributions would be in cash or cash equivalent for the "purpose of meeting the minimum anticipated requirements of the HMO and for the purpose of preserving the HMO's financial viability through a period ending December 31, 1999". At the time of entering the Second Amendment, Novopharm Holding's capital contribution to Certus exceeded $6,900,000.00. Moreover, by December 31, 1998, Novopharm Holdings' capital contributions totaled approximately $13,852,202.00 as set forth on **Exhibit A** attached hereto. Certus continued its operations in 1999, and Novopharm Holdings continued to make capital contributions on an as need basis totaling $26,414,256.00 through December, 1999.

17. Novopharm Holdings made the additional capital contributions referenced in paragraph 12 above until the time Certus was sold to Certus Health Management, Inc., a subsidiary of Wellcare HMO, Inc. (collectively referred to as "Wellcare"). An arms-length sale contract with Wellcare was entered September 21, 1999, and the transaction closed November 2, 1999.

18. At the time of sale, it was estimated that Certus' outstanding liabilities were in the approximate amount of $5,000,000.00. Pursuant to the sale contract, Novopharm Holdings received nothing in return from its investment, but further had to agree to contribute to Wellcare and/or Certus the additional sum of $5,400,000.00 to cover Certus' existing liabilities and potential claims. The additional cash served as financial incentive for the buyer to purchase the corporate entity as a going concern (and not just its assets) and to assume these liabilities.

19. The sale of Certus was contingent upon and finally approved by written order of TDI. At the time of sale, Certus was in good standing with the Texas Comptroller of Public Accounts and had satisfactorily met all requirements of TDI for the transfer of its business to Wellcare.

20. To the best of my knowledge, information and belief, Certus has and is continuing to meet the requirements of TDI in order to maintain its license with the State of Texas. Such requirements include maintaining minimum reserves for covered and uncovered liabilities. Moreover, Certus and Wellcare are responsible to indemnify, defend and to hold Novopharm Holdings harmless from all obligations, claims and liabilities as may arise from transactions after the closing date, November 2, 1999.

6

21.     Certus was properly organized as a Texas limited liability company with the Texas Secretary of State. Its members made substantial capital contributions to its formation prior to ever engaging in business. The HMO also met the funding requirements imposed by TDI before being licensed to do business in the State of Texas. The members of Certus formalized their intentions regarding capital contributions, management, and other rights and duties in a written Operating Agreement. Certus was operated at all times by its U.S. managers who were David Rodriguez, Dr. Gumbhir and by other individual officers and employees, none of whom were related to or connected with Novopharm Ltd. or Novopharm Holdings. Certus had its own tax identification number, maintained its own books and records and filed its own tax returns until the year of sale to Wellcare. Novopharm Holdings and Novopharm Ltd. never engaged in business in the State of Texas in their own name or in behalf of Certus. Novopharm Holdings' interest in Certus was merely that of an investor. Moreover, Novopharm Ltd. never had an ownership interest in Certus other than through its ownership of Novopharm Holdings. Novopharm Holdings fulfilled its agreement in providing financial assistance to Certus as required by TDI, and Novopharm Holdings fulfilled its agreement with the buyer, Wellcare, by paying the additional $5,400,000.00 thus bringing its total capitalization to approximately $29,014,256.00. This amount does not include other cash amounts paid to or for the benefit of Certus of $34,500.00. To say that Certus was ever undercapitalized is misleading to the Court and totally false.

22.     Certus was never the agent for Novopharm Holdings or for Novopharm Ltd. Certus existed and operated entirely as a valid, legal entity under the laws of the State of Texas. Novopharm Ltd., whose offices were located in Toronto, Canada, and Novopharm Holdings, of Wilmington, Delaware, never communicated with potential members of the HMO or the public in general that Certus was acting as an agent in its behalf. All marketing materials, literature, letterhead, brochures, contracts, applications, its office address, telephone directory, publications, listings, advertising and other written and oral communications prominently displayed or announced the name Certus Healthcare, L.L.C. as being the entity engaged in business in the State of Texas as an HMO. As a consequence, Novopharm Ltd. and Novopharm Holdings did not and could not have reasonably created the appearance to the public

7

or to HMO members that Novopharm Ltd. and not Certus was engaged in business in the State of Texas. If the public was informed that Certus was backed financially by a large pharmaceutical company, such representation is nothing more than a statement of fact and a matter of public knowledge which existed on file at TDI.

23.     Every state and federal governmental agency has recognized Certus as the proper party doing business.  No officer, director or employee or other agent of Certus was ever authorized to communicate, nor to the best of my knowledge did any such person ever communicate, that Certus was acting as agent for Novopharm Ltd.  Certus was owned and operated as a separate and distinct legal entity from its owners, Novopharm Holdings and THCP.  The respective rights of the owners were clearly established by the Operating Agreement between them, a copy of which was filed with TDI.  All filings with TDI and with the Texas Secretary of State's office as well as with all taxing and other governmental authorities were in the name of Certus and not Novopharm Ltd., THCP or Novopharm Holdings.  During its operation, Certus wrote thousands of insurance policies, paid thousands of claims, and dealt with hundreds of care providers and claimants.  To my knowledge, no one has ever asserted that he, she or it was doing business with Certus as an agent for Novopharm Holdings or Novopharm Ltd.  Moreover, no state agency has ever questioned that Novopharm Ltd. or Novopharm Holdings was attempting to do business in the State of Texas by or through the acts of Certus as agent, and no person has ever filed any claim against Novopharm Ltd. or Novopharm Holdings on the basis that Certus was acting as agent.  This lawsuit stands alone in asserting that conclusion which is neither true nor factually possible.

24.     This affidavit is respectfully submitted in support of Defendant Novopharm Ltd. and Novopharm Holdings' Motion for Summary Judgment and request for dismissal of said Defendants from this lawsuit.

(SIGNATURE PAGE ATTACHED)

8

FURTHER AFFIANT SAYETH NOT.

_____ (SEAL)
Dan Youtoff

Sworn to and subscribed before me
this 9th day of June , 2000.

_____
Notary Public

My Commission Expires: __N/A__

(STAMP/SEAL)



9

# NOVOPHARM HOLDINGS, INC.   Exhibit A
## FUNDING TO CERTUS HEALTHCARE, L.L.C.

**All amounts in US $**

This is Exhibit A to the Affidavit of Dan Youtoff sworn before me this 8th day of June, 2000

_____
(Notary Public)

| | Date | Amount | Cumulative Funding |
|---|---|---|---|
| **1995** | Dec 22 | 150,000 | |
| | Total 1995 | 150,000 | 150,000 |
| **1996** | April 9 | 500,000 | |
| | April 23 | 100,000 | |
| | May 16 | 100,000 | |
| | June 14 | 100,000 | |
| | July 15 | 100,000 | |
| | August 2 | 500,000 | |
| | October | 174,146 | |
| | October | 183,735 | |
| | **Total 1996** | 1,757,881 | 1,907,881 |
| **1997** | January | 197,043 | |
| | March | 211,374 | |
| | March | 194,906 | |
| | April | 214,874 | |
| | May | 215,345 | |
| | June | 164,490 | |
| | July | 136,226 | |
| | August | 131,436 | |
| | Sept | 176,331 | |
| | Sept | 252,289 | |
| | November | 283,179 | |
| | December | 221,828 | |
| | December | 600,000 | |
| | **Total 1997** | 2,999,321 | 4,907,202 |
| **1998** | March | 1,000,000 | |
| | March | 450,000 | |
| | April | 300,000 | |
| | May | 250,000 | |
| | July | 1,000,000 | |
| | July | 750,000 | |
| | August | 170,000 | |
| | August | 500,000 | |
| | September | 775,000 | |
| | October | 250,000 | |
| | October | 250,000 | |
| | October | 250,000 | |
| | October | 250,000 | |
| | November | 250,000 | |
| | November | 250,000 | |
| | November | 750,000 | |
| | November | 250,000 | |
| | December | 250,000 | |
| | December | 250,000 | |
| | December | 250,000 | |
| | December | 250,000 | |
| | December | 250,000 | |
| | **Total 1998** | 8,945,000 | 13,852,202 |

# NOVOPHARM HOLDINGS, INC.   Exhibit A
## FUNDING TO CERTUS HEALTHCARE, L.L.C.

**All amounts in US $**

|  | Date | Amount | Cumulative Funding |
|---|---|---|---|
| **1999** | January | 250,000 | |
| | January | 250,000 | |
| | January | 250,000 | |
| | January | 250,000 | |
| | February | 250,000 | |
| | February | 250,000 | |
| | February | 250,000 | |
| | February | 250,000 | |
| | March | 250,000 | |
| | March | 250,000 | |
| | March | 262,054 | |
| | March | 250,000 | |
| | March | 250,000 | |
| | March | 250,000 | |
| | April | 250,000 | |
| | April | 250,000 | |
| | April | 250,000 | |
| | April | 250,000 | |
| | May | 250,000 | |
| | May | 250,000 | |
| | May | 250,000 | |
| | May | 250,000 | |
| | June | 250,000 | |
| | June | 250,000 | |
| | June | 250,000 | |
| | June | 250,000 | |
| | July | 250,000 | |
| | July | 250,000 | |
| | July | 250,000 | |
| | August | 250,000 | |
| | August | 250,000 | |
| | August | 250,000 | |
| | September | 250,000 | |
| | September | 250,000 | |
| | October | 250,000 | |
| | October | 250,000 | |
| | November | 2,250,000 | |
| | December | 650,000 | |
| | December | 650,000 | |
| | **Total 1999** | **12,562,054** | 26,414,256 |
| **2000** | February | 650,000 | |
| | March | 650,000 | |
| | April | 650,000 | |
| | May | 650,000 | |
| | | **2,600,000** | 29,014,256 |

File Name :NovoFundtoCertus.123          Disk 15          06/09/00     10:29:30 AM