United States District Court
Southern District of Texas
FILED

NOV 1 7 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOEL FLORES, Individually and on §
Behalf of All Others Similarly Situated §
§ CIV. ACTION NO. B-00-53
V. §
§
CERTUS HEALTHCARE, L.L.C., §
NOVOPHARM LIMITED, DAVID § CLASS ACTION
RODRIGUEZ, DR. ASHOK K. GUMBHIR, §
and NOVOPHARM HOLDINGS, INC. §

### PLAINTIFF'S RESPONSE TO DEFENDANT NOVOPHARM HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Joel Flores, Plaintiff, files this his Response to Defendant Novopharm Holdings, Inc.'s Motion for Summary Judgment. In this Response, Plaintiff shows the Court that Defendant Novopharm Holdings, Inc.'s Motion for Summary Judgment should be denied because there are genuine issues of material fact as to: (1) whether Novopharm Holdings, Inc. met its legal and contractual obligations to adequately fund Certus HealthCare, L.L.C.; and (2) whether Certus HealthCare, L.L.C.'s corporate veil should be pierced under the "sham to perpetuate a fraud" theory.

### I.

### FACTUAL BACKGROUND

Novopharm Limited is a Canadian pharmaceutical company. (Youtoff Affidavit ¶ 6).[1] It does business in the United States through its wholly-owned holding company, Novopharm Holdings, Inc. (*See* Exhibit 15, at 66:11-19, 68:3-9, 69:6-12).[2] Novopharm

---

[1] Dan Youtoff's affidavit is attached to Novopharm Holdings' Motion for Summary Judgment.
[2] In this Response, page and line citations to deposition testimony will take the form of "{page}:{lines}."

**Plaintiff's Summary Judgment Response**                               Page 1 of 13

Holdings, Inc. was, from the formation of Certus until its sale in November 1999, either the majority shareholder or sole shareholder of Certus.

**Novopharm Agrees To Fully Fund Certus**

Novopharm Holdings' role in Certus was always to provide funds. This role began in 1995 David Rodriguez, along with Orlando Julian and John Phillips, decided that they wanted to form an HMO in South Texas. (Exhibit 1, at 37:14-40:19). However, they did not have the capital needed start up an HMO. (Exhibit 1, at 45:15-24, 63:10-18). Therefore, they sought to have Novopharm provide Certus with the financial backing they needed. Rodriguez met with Leslie Dan, chairman of Novopharm Limited, and convinced Novopharm Limited to invest in Certus. (Exhibit 1, at 49:11-56:5; Exhibit 2). Novopharm Limited agreed to invest $1.4 million in Certus, and Rodriguez's group, Total Health Care Plans, Inc. ("THCP"), agreed to invest $150,000.00. (Exhibit 3, at 3). In return, Novopharm Limited received a 51% equity ownership in Certus. (Exhibit 3, at 4). Novopharm also could, but was not required to, make an additional $1.1 million in contributions. (Exhibit 3, at 3-4).

Novopharm Limited later assigned its interest in Certus to its holding company, Novopharm Holdings. (Exhibit 4).

From the beginning, it was clear that, in order for Certus to operate, Novopharm Holdings would have to fund more than was required by the Contribution and Subscription Agreement. (Exhibit 1, at 76:22-77:13). In fact, the Texas Department of Insurance would not approve Certus' application to operate as an HMO unless Novopharm agreed to increase its funding commitment. (Exhibit 1, at 88:24-90:7). Therefore, Novopharm Holdings and THCP entered into a First Amendment to Operating Agreement for Certus HealthCare, L.L.C., which firmly required Novopharm Holdings to contribute $3,000,000.00 to Certus. (Exhibit 5, at 2). However, even this

**Plaintiff's Summary Judgment Response**                                   Page 2 of 13

amount was insufficient. (Exhibit 1, at 90:23-25). If Novopharm Holdings had not contributed additional funds, Certus would not have been able to continue operating. (Exhibit 1, at 96:10-97:3).

Certus began selling policies in October 1996, (Exhibit 1 91:12-16), and very quickly began losing money. As a result, Certus had a negative net worth during most of its existence. (Exhibit 1, at 115:12-14; Exhibit 12; Exhibit 15, at 102:9-103:12). Even though Novopharm contributed money to Certus, it did not contribute enough. As a result, Certus often had a negative net worth. (Exhibit 1, at 168:19-169:4; Exhibit 12).

By April 1998, Certus' net worth was "of concern" to the Texas Department of Insurance ("TDI"). (Exhibit 6). As a result, executives from Certus and Novopharm met with the TDI. Ed McCormack from Novopharm was present to show that Novopharm would provide money and financial stability to Certus. (Exhibit 1, at 230:1-231:18, Exhibit 7). Novopharm then formalized its agreement to fully fund Certus when it entered into the Second Amendment to the Operating Agreement. (Exhibit 8). The reason that Novopharm entered into the Second Amendment was that the TDI requested that they do so. (Exhibit 1, at 232:6-10). The Second Amendment obligated Novopharm Holdings to "make such contributions to Certus HealthCare, L.L.C. . . . for the purpose of meeting the minimum anticipated requirements of the HMO and for the purpose of preserving the HMO's viability through the period ending December 31, 1999." (Exhibit 8). That meant that Novopharm was required to provide sufficient funding so that: (1) Certus would not have a negative equity position; and (2) Certus would be current with its obligations to Doctors and Hospitals. (Exhibit 9).

Certus failed to meet the obligations it undertook in the Second Amendment. In a memorandum dated June 29, 1998, Dan Youtoff of Novopharm wrote:

**Plaintiff's Summary Judgment Response**                              Page 3 of 13

> 1) Certus has incurred losses of approximately $2.5 million to the end of May 1998. This is a cash loss and contribution of a similar amount is required to keep them in a solvent position.
>
> 2) Certus' claims payable exceed the cash available for payment by approximately $2.5 million. This deficiency is resulting in payments to Doctors and Hospitals being made well past their due date. [These] late payment[s] of obligations are hindering David's attempts to negotiate lower rates with the Doctors and Hospitals.
>
> 3) We have committed to the Texas Department of Insurance (TDI) in writing that we will provide adequate financial support to Certus to ensure compliance with their minimum solvency requirements to the end of December 31, 1999. These minimum solvency requirements include that the HMO must not have a negative equity position and must be current with its obligations to Doctors and Hospitals. At May 31, 1998 Certus had a net deficit of $1,417,746 and is not current with its obligations. . . .

(Exhibit 9). A few months later, on October 1, 1998, Dan Youtoff wrote another memo showing that Novopharm was not meeting its financial obligations. (Exhibit 10). He wrote:

> **Operation Difficulties – Funding**
>
> Certus' lack of funding and slow payment to medical providers has resulted in two new problems. The first being that the "Weiss Ratings" guide to HMO's and Health Insurers have given Certus an E- (lowest rating possible). . . .
>
> Certus' slow payment of medical providers is well known in its service areas. . . .
>
> Novopharm has committed to the [TDI] to fund Certus operating losses.
>
> **Funding Summary**
>
> | | |
> |---|---|
> | Certus' Fiscal 1998 losses to [8/31/98] | $5,932,342 |
> | Novopharm Funding of Fiscal 1998 Losses to September 30, 1998 | $3,025,000 |
> | **Shortfall** | **$2,907,342** |
>
> It is this shortfall that is causing Certus the problems described earlier in this memo.

**Plaintiff's Summary Judgment Response**                                   Page 4 of 13

(Exhibit 10). As this memorandum clearly states, Certus was unable to timely pay medical providers because Novopharm did not provide the funding it promised to provide. (Exhibit 10).

The TDI was not the only entity concerned with Certus' financial instabiltiy. LaMar and Phillips, Inc., Certus' reinsurer, was also concerned. (Exhibit 1, at 152:1-6). Certus needed reinsurance to operate. (Exhibit 1, at 152:15-22). However, because of Certus' losses, the reinsurer would not write Certus a policy unless Novopharm agreed to fund Certus' deficit for 12 months. (Exhibit 11; Exhibit 1, at 158:22-159:12). Therefore, on September 11, 1997, Novopharm Limited wrote a letter to LaMar & Phillips, Inc. stating:

> I'm writing to confirm that Novopharm Limited is a partner in Certus HealthCare, L.L.C. and that our ownership percentage remains unchanged from when the company was incorporated. I can also confirm that Novopharm is committed to fund the operation's deficit for the next twelve months.

(Exhibit 11).

Although Novopharm admittedly contributed several million dollars to Certus, it never committed the amounts it agreed to invest when it signed the Second Amendment. At the end of 1998, Certus' net worth was negative $5,500,191.00.[3] (Exhibit 12). On April 29, 1999, due to Certus' "hazardous financial condition," the TDI put Certus under administrative oversight. (Exhibit 13). On August 13, 1999, due to Certus' ever-worsening condition, The TDI placed Certus under supervision. (Exhibit 14). By November 1999, when Novopharm sold Certus, the HMO had a net worth of negative $5.4 million. (Exhibit 15, at 104:3-9). As a result, Novopharm *paid* the purchaser of Certus $5.4 million to take Certus off its hands. (Exhibit 15, at 58:5-12;

**Plaintiff's Summary Judgment Response**                                                           Page 5 of 13

Exhibit 16). If Novopharm had met its obligation to contribute enough money to keep Certus' net worth positive, it would not have had to pay the purchaser to take the HMO. However, by delaying the funding of Certus' deficit until after its sale, Novopharm did not give Certus enough funding to timely pay claims. (Exhibits 9, 10).

**Novopharm's Name Used In Certus' Marketing**

Certus used Novopharm's name in marketing. It called Novopharm Certus' "financial partner." (Exhibit 1, at 97:10-99:9). One marketing document included a section entitled "Meet Our Corporate Partner," which stated:

> In addition to our team of seasoned professionals, Certus is built on a solid foundation of financial strength, which includes the investment support of our corporate partner, Novopharm Limited. Novopharm is a multi-national pharmaceutical manufacturer, distributor, and research entity with worldwide sales in excess of one half billion dollars annually.
>
> Founded in 1976 by Leslie Dan, Chairman and Chief Executive Officer, Novopharm employes over 3,000 persons worldwide. Novopharm has demonstrated a philosophy of caring by giving millions of dollars to charities each year. In addition to donating needed medicines and funding, Novopharm currently is working to develop new and better drugs, including ground-breaking achievements in the treatment of cancer.
>
> Novopharm will continue its efforts toward helping people achieve better health with its commitment to Certus and to South Texas.

(Exhibit 17). Another marketing document, entitled "Certus HealthCare at a Glance," stated:

> While Certus is a local company with its management team based here in South Texas, we are affiliated with some of the largest and most respected healthcare corporations in the world. Most prominent among them is Novopharm Limited, a multi-billion dollar pharmaceutical manufacturer with over 3,000 employees worldwide. Novopharm is the primary shareholder of Certus and is committed to its financial success and its mission to improve the overall healthcare of South Texas.

---

[3] Which is worse than the negative $1,678,432 net worth at the end of 1997. (*See* Exhibit 12). That means that, even though Novopharm agreed to fully fund Certus' deficit, Certus was actually worse off financially that it was before Novopharm entered into the Second Amendment.

**Plaintiff's Summary Judgment Response**                                        Page 6 of 13

(Exhibit 18). Novopharm knew that its name was being used, and approved of its use. (Exhibit 1, at 97:10-99:9). The reason that Certus used Novopharm's name in marketing documents was to let potential customers know that Certus—due to Novopharm's financial backing—would "have the financial wherewithal to operate." (Exhibit 1, at 117:2-118:17).

### Novopharm's Involvement In Certus' Operation

Novopharm's involvement in Certus was more than that of a mere investor. At least three Novopharm personnel—Leslie Dan, Ed McCormack, and Dan Youtoff—made numerous trips to McAllen to monitor Certus. (Exhibits 19-24). Further, McCormack and Youtoff participated in Certus's meetings with the TDI. (Exhibit 15, at 42:2-8; 200:23-201:8; Exhibit 25). Dan and McCormack were signatories on Certus' checking account (Exhibit 26; Exhibit 1, at 79:8-80:13). At one point, Certus was not allowed to hire any employees without Dan's permission. (Exhibit 15, at 195:5-22). In fact, Youtoff even met with the Hidalgo County Insurance Committee to help Certus get an account. (Exhibit 15, at 154:12-156:10). Even Youtoff admitted that Novopharm exerted more control over Certus than would a normal investor. (Exhibit 15, at 196:8-18).

### Novopharm Holdings Is the Alter Ego of Novopharm Limited

Novopharm Holdings, Inc. does not have any employees or bank accounts. (Exhibit 15, at 70:2-21; 117:23-118:9, 157:13-158:21). It does not even maintain separate corporate records with regard to the Novopharm investment in Certus (Exhibit 15, at 176:2-7). Based on this information, which Plaintiff first learned during discovery in this case, Plaintiff has moved to amend his Complaint and allege that Novopharm Holdings, Inc. is the alter ego of Novopharm Limited. (See First Amended Complaint).

**Plaintiff's Summary Judgment Response**                                    Page 7 of 13

# II.

# ARGUMENT

A. **Novopharm Holdings Is Vicarious Liable For Certus' Misfeasance Because Certus Was Undercapitalized**

Under Texas law, one of the theories on which a plaintiff may pierce the corporate veil is undercapitalization. <u>Castleberry v. Branscum</u>, 721 S.W.2d 271, 272 n.3 (Tex. 1986). The corporate veil can also be pierced when it amounts to a "sham to perpetrate a fraud." <u>First Gibraltar Savings v. LD Brinkman</u>, 860 F.2d 1275, 1288 (5th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1091 (1989). Actual fraud is unnecessary to pierce the corporate veil on a "sham" theory; a showing of constructive fraud is sufficient. <u>Castleberry</u>, 721 S.W.2d at 273. To show constructive fraud, it is sufficient to show that recognizing the subsidiary's separate corporate existence would bring about an inequitable result. <u>Id.</u> at 272; Gerard Gaspard, III, <u>A Texas Guide to Piercing and Preservig the Corpoarate Veil</u>, 31-Sept. <u>Bull. Bus. Law. Sec. St. B. Tex.</u> 23, 44-46 (1994) (attached as Exhibit 27).

An analogous case is <u>Cupples Coiled Pipe, Inc. v. Esco Supply Co.</u>, 591 S.W.2d 615 (Tex. Civ. App.—El Paso 1979). In that case, the court of civil appeals affirmed a jury verdict piercing a corporate veil where the subsidiary was undercapitalized in that it could not continue doing business without a continual influx of cash from the parent corporation.

In this case, refusing to hold Novopharm Holdings liable for the results of Certus' lack of funding would make Certus' corporate existence "a sham to perpetuate a fraud." Certus never had the financial resources to operate on its own as an HMO. (Exhibit 1, at 96:10-97:3). It could not even pay its franchise fee; Novopharm had to give it the money to do so. (Exhibit 15, at 164:4-170:11, Exhibit 29). As a result, Certus made

promises to the TDI (Exhibit 8), to Certus' reinsurer (Exhibit 11), and even to some of Certus customers (Exhibit 28) that it would fully fund Certus' operations. Specifically, Novopharm assumed the obligation to provide sufficient funding for Certus to: (1) have a positive net worth; and (2) make timely payments to medical providers. (Exhibit 9). It failed to do so, and as a result medical providers were not paid on a timely basis. (Exhibits 9, 10). By the time Novopharm sold Certus, it was so far behind in its funding obligation that it had to *pay* the purchaser $5.4 million to take Certus off its hands. (*See* Exhibit 16). This breach of Novopharm's voluntarily-assumed funding obligation, especially when taken together with Novopharm's involvement in Certus' operations and the use of Novopharm's name in Certus' marketing, justify piercing the corporate veil under both the undercapitalization and sham to perpetrate a fraud theories.

## B.  Objections to the Youtoff Affidavit

Novopharm Holdings, Inc.'s sole piece of summary judgment evidence is the Affidavit of Dan Youtoff, which is attached to its Motion for Summary Judgment. However, that affidavit is objectionable in several respects.

First, the entire affidavit is incompetent because it fails to state that the facts it contains are true and within the affiant's personal knowledge. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). As such, it is incompetent summary judgment evidence, and cannot be considered by the court.

Second, paragraph 5 of the affidavit, which states "Certus was neither the agent of its ultimate parent, Novopharm Ltd., nor was Certus undercapitalized," simply states a legal conclusion. It is not a statement of fact. Therefore, it is incompetent as summary judgment evidence.

<u>**Plaintiff's Summary Judgment Response**</u>                                                                      Page 9 of 13

Third, the last sentence of paragarph 21, which states, "To say that Certus was ever undercapitalized is misleading to the Court and totally false," is again a legal conclusion, not a statement of fact.[4]

## III.

## SUMMARY JUDGMENT EVIDENCE

Plaintiff has submitted the following summary judgment evidence along with this Response:

| | |
|---|---|
| Exhibit 1 | Deposition of David Rodriguez |
| Exhibit 2 | June 25, 1995 letter from Leslie Dan of Novopharm Limited to David Rodriguez of Total Health Care Plans, Inc. |
| Exhibit 3 | Contribution and Subscription Agreement for Oasis Health Plans (which later became Certus HealthCare, L.L.C.) |
| Exhibit 4 | Assignment of Contribution Agreement |
| Exhibit 5 | First Amendment to Operating Agreement for Certus HealthCare, L.L.C. |
| Exhibit 6 | April 29, 1998 letter from David Rodriguez of Certus to Dan Youtoff of Novopharm Limited |
| Exhibit 7 | May 14, 1998 memorandum from Edward McCormack to Leslie Dan |
| Exhibit 8 | Second Amendment to Limited Liability Company Operating Agreement for Certus HealthCare, L.L.C. |
| Exhibit 9 | June 29, 1998 memorandum from Dan Youtoff to Edward McCormack |
| Exhibit 10 | October 1, 1998 memorandum from Dan Youtoff to Edward McCormack and Leslie Dan |
| Exhibit 11 | September 11, 1997 letter from Edward McCormack of Novopharm Limited to M. Terry Chesser of LaMar & Phillips, Inc. |
| Exhibit 12 | Excerpts from the 1998 Annual Statement of Certus HealthCare, L.L.C. |

---

[4] It is also untrue, as is shown above.

**Plaintiff's Summary Judgment Response**                        Page 10 of 13

| | |
|---|---|
| Exhibit 13 | April 29, 1999 letter from Jose Montemayor of the Texas Department of Insurance to David Rodriguez of Certus HealthCare, L.L.C., placing Certus under Administrative Oversight |
| Exhibit 14 | August 13, 1999 order from the Texas Department of Insurance placing Certus under supervision |
| Exhibit 15 | Deposition of Daniel Youtoff |
| Exhibit 16 | Purchase Agreement (for the Wellcare group's purchase of Certus) |
| Exhibit 17 | Certus marketing brochure |
| Exhibit 18 | Marketing document entitled "Certus HealthCare at a Glance" |
| Exhibit 19 | February 2, 1998 memorandum from Dan Youtoff to Edward McCormack and Leslie Dan |
| Exhibit 20 | September 11, 1997 memorandum from Edward McCormack to Leslie Dan |
| Exhibit 21 | December 9, 1997 memorandum from Dan Youtoff to Edward McCormack |
| Exhibit 22 | March 30, 1998 memorandum from Leslie Dan to Dr. Ashok Gumbhir |
| Exhibit 23 | April 24, 1998 memorandum from Dan Youtoff to Edward McCormack and Leslie Dan |
| Exhibit 24 | June 9, 1998 memorandum from Dan Youtoff to Edward McCormack and Leslie Dan |
| Exhibit 25 | May 14, 1998 memorandum from Edward McCormack to Leslie Dan |
| Exhibit 26 | Signature cards for Horizon Health Plan bank accounts (which later became Certus HealthCare, L.L.C.) |
| Exhibit 27 | Gerard Gaspard, II, A Texas Guide to Piercing and Preserving the Corporate Veil, 31-Sept. Bull. Bus. L. Sec. St. B. Tex. 24 (1994) |
| Exhibit 28 | February 16, 1998 letter from Edward McCormack of Novopharm Limited to Hon. Renato Cuellar, Hidalgo County Judge |
| Exhibit 29 | February 26, 1998 memorandum from Dr. Ashok Gumbhir to Leslie Dan |
| Exhibit 30 | Affidavit of Michael R. Cowen (authenticating the other exhibits) |

**Plaintiff's Summary Judgment Response**  Page 11 of 13

# IV.

## CONCLUSION

Novopharm Holdings chose to assume the obligation of funding Certus. It chose to make representation to the TDI, to Certus' reinsurer, and to Certus' customers that it would provide Certus with the financial support it needed. It chose to allow its name to be used in Certus' marketing materials. However, it also chose not to fulfill those obligations, and as a result Certus did not have the funds it needed to timely pay members claims. Therefore, justice demands that Novopharm Holdings be held liable in this case, and the Court should DENY Novopharm Holdings' Motion for Summary Judgment.

Respectfully submitted,

MICHAEL R. COWEN, P.C.
Michael R. Cowen
Federal ID No. 19967
State Bar No. 20545700
765 E. 7th Street, Suite A
Brownsville, Texas 78520
(956) 546-5567
(956) 541-2205 (Fax)

LAW OFFICES OF JOHN VENTURA, P.C.
7 North Park Plaza
Brownsville, Texas 78521
Tel. No. (956) 546-9398
Fax No. (956) 542-1478

By: _____
Michael R. Cowen, P.C.
Federal I.D. No. 19967
Texas Bar No. 00795306

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the above and foregoing document has be forwarded via certified mail, return receipt requested to:

Jeffrey D. Roerig  
ROERIG, OLIVEIRA & FISHER, L.L.P.  
855 W. Price Road, Suite 9  
Brownsville, Texas 78520  

**CMRRR # Z556619589**

Norton A. Colvin, Jr.  
RODRIGUEZ, COLVIN & CHANEY, L.L.P.  
1201 E. Van Buren Street  
Brownsville, Texas 78520  

**CMRRR # Z556619590**

John R. Wallace  
Wallace, Creech & Sarda, L.L.P.  
UCB Plaza  
3605 Glenwood Avenue, Suite 240  
Raleigh, North Carolina 27612  

**CMRRR # Z556619591**

on this 17th day of November 2000.

_____  
Michael R. Cowen

**Plaintiff's Summary Judgment Response**                                        Page 13 of 13