37

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 8 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOEL FLORES, Individually and On Behalf of All Others Similarly Situated | * * * | |
| VS. | * * | CIVIL ACTION NO. B-00-053 |
| CERTUS HEALTHCARE, L.L.C.; NOVOPHARM LIMITED; DAVID RODRIGUEZ; DR. ASHOK K. GUMBHIR; and NOVOPHARM HOLDINGS, INC. | * * * * | |

## DEFENDANT NOVOPHARM HOLDINGS, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

COMES NOW NOVOPHARM HOLDINGS, INC., Defendant herein, and files this, its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment.

### ARGUMENT

Put simply, Defendant Novopharm Holdings, Inc. ("Holdings") does not dispute the fact that its investments in Certus Healthcare, L.L.C. ("Certus") were unsuccessful, that Certus lost money, and that Certus, in general, was unsuccessful as a business entity. However, Holdings vehemently disputes, and no evidence has been offered to support, any notion that Certus was created as a "sham to perpetuate a fraud" or that Certus was undercapitalized in any way. In Plaintiff's Response to Defendant's Motion for Summary Judgment, he has proffered to the Court voluminous evidentiary material obtained during discovery and has mischaracterized the evidence, raising inaccurate inferences from that evidence in an attempt to create issues of fact regarding the alleged undercapitalization of Certus. To the contrary, the facts and the evidence show that the standards for piercing the corporate veil are not met in this case and could not be met under any proper or reasonable inference from the facts.

*DEFENDANT'S REPLY TO PLAINTIFF'S SUMMARY JUDGMENT RESPONSE*                    *PAGE 1 OF 7*

# I.

Holdings submits with this reply two affidavits supplementing prior deposition testimony in this case. Attached are the unsigned affidavit of David Rodriguez (Mr. Rodriguez is ill but has confirmed telephonically that the facts in the affidavit are true and correct and is endeavoring to forward a signed and sworn copy of the affidavit to counsel) and the faxed, sworn affidavit of Dan Youtoff. Holdings will supplement these affidavits with original sworn copies as soon as they are received. Holdings contends that the supplemented affidavit testimony corrects the improper or unreasonable inferences drawn by Plaintiff in his response.

The Affidavit of David Rodriguez emphasizes that although Certus may have been late in making payments to providers, the providers were required by contract and by state law to continue seeing patients. Affidavit of David Rodriguez, ¶¶ 5, 8. Certus met the requirements for the maintenance of adequate numbers of physicians, specialists, and hospital facilities throughout the period of Rodriguez' employment. Rodriguez, ¶ 7. Further, Certus never represented to members that they would be able to see particular providers, and they were not entitled to do so according to the terms of members' contracts. Rodriguez, ¶¶ 6, 9. Thus, Plaintiff's argument that late payments by Certus, which he alleges were caused by insufficient funding by Holdings, caused him injury is unavailing.

The Second Affidavit of Dan Youtoff emphasizes first that Holdings met the funding requirements placed upon it by the operating agreement and its amendments along with those put in place by the Texas Department of Insurance promptly in accordance with the budgeting requests of Certus' staff. Second Affidavit of Dan Youtoff, ¶¶ 6, 7. Mr. Youtoff also emphasizes that the payment of $5,400,000 at the sale of Certus was made to pay all of Certus'

payables up to the date of the sale, including those not yet reported by providers.  Youtoff, ¶¶ 8, 9.  These statements reconfirm that Holdings' obligations were properly met.

## II.

Plaintiff's sole argument in opposition to Holdings' Motion for Summary Judgment is that Certus' corporate veil should be pierced so as to allow liability against Holdings, a member and manager of Certus, for alleged wrongs by Certus.  Plaintiff bases this argument on an amalgamation of two "piercing" theories: undercapitalization and "sham to perpetuate a fraud".  In support of his argument, Plaintiff relies primarily on two cases: *Cupples Coiled Pipe, Inc. v. Esco Supply Co.*, 591 S.W.2d 615 (Tex. Civ. App. – El Paso 1979) and *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986).  These cases are easily distinguishable from the facts of this case.

In *Castleberry*, the defendants utilized a corporation, Texan Transfer, to defraud the plaintiff of his investment in the corporation.  The individual defendants, partners with the plaintiff in Texan Transfer, formed a competing corporation, Elite Moving, that took over the assets and business of Texan Transfer after the plaintiff had sold his capital stock for a promissory note from Texan Transfer.  *Castleberry*, 721 S.W.2d at 274.  Prior to the plaintiff's sale of his stock, Texan Transfer had a net income of over $60,000, and after the sale, it reported a net income of $2,000 in the first year and a loss of $16,000 the second.  Elite Moving reported a net income that same year of $195,000.  *Id.*  The Supreme Court of Texas held that there was sufficient evidence that the corporate structures in the case had been used to perpetuate a fraud on the plaintiff.  It specifically noted the following evidence that a sham had taken place: "a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to

pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers and directors." *Id.* at 275.

Plaintiff relies on this case for the definition of a "sham to perpetuate a fraud," which is essentially that the corporate form has been used to commit constructive fraud. *Id.* at 273. Plaintiff states conclusorily that "refusing to hold Novopharm Holdings, Inc. liable for the results of Certus' lack of funding would make Certus' corporate existence 'a sham to perpetuate a fraud,'" but provides no comparison to the facts in *Castleberry*. The facts of *Castleberry* speak directly to the kind of situation the Supreme Court of Texas contemplated in espousing the "sham" theory of piercing. There is no evidence in this case that Certus was used intentionally or constructively to defraud the plaintiff or anyone else. There was no shifting of assets or abandonment of unwanted obligations as in *Castleberry*. Indeed, funds flowed only to Certus and never back to Holdings. Thus, *Castleberry* is inapposite.

In *Cupples*, where the piercing is based on a theory of undercapitalization, the relationship between the parent corporation and the subsidiary was such that the entities were barely recognizable as separate corporations. An accountant testified that the relation was similar to a "home office-branch warehouse operation whereby one spoon-fed the other to keep it alive." *Cupples*, 591 S.W.2d at 617. The accountant concluded that the "financial operations and the advancing of funds were not consistent with independent corporate entities." *Id.* The Court also noted that the subsidiary corporation was "broke" and "out of business" and that when the subsidiary finally shut down, the remaining assets were "funneled back" to the parent. *Id.* at 618. In light of all of those reasons, the Court found that the other party was "placed in a position of disadvantage by the exercise of inequitable means, of which the corporate arrangement is a part," and allowed the piercing. *Id.*

In this case, Holdings and Certus operated as separate and distinct corporations. The corporations were related, but their interaction was conducted in a manner similar to most parent-subsidiary relationships. The financial operations of the corporations were completely independent of one another. The funding provided by the parent in *Cupples* differs both in its amount in relation to the subsidiary's overall budget and the means by which the funding was requested from the funding provided by Holdings to Certus.

Plaintiff's own exhibit evidence indicates that a traditional budgeting process was used to pre-determine gain or losses and to determine any resulting requests for funding from Holdings. *See* Plaintiff's Exhibits 9, 19-21, 23-25. The evidence also indicates that Certus suffered greater losses than were budgeted, resulting, at times, in delayed payments to health care providers. The delay of payments is, in actuality, an indicator of a traditional financial relationship between the corporations. It is proof that Holdings and Certus maintained separate financial operations that required extensive communication regarding budgeting and operations before funding was forthcoming, in accord with the operating agreement and its amendments. A lack of financial success does not justify piercing Certus' corporate veil. Certus was not "broke" or "out of business." Certus was sold as a going concern to different ownership. It was sold under the scrutiny of and with approval by the Texas Department of Insurance. The assets of Certus were sold, including its members, its physical assets, its license to conduct business as an HMO, and its various bonds and deposits with the Texas Department of Insurance. No asset of Certus was "funneled back" to Holdings or Limited to the detriment of any member or creditor.

### III.

Holdings made an investment in Certus that turned out to be unsuccessful. However, in the face of continuing losses and a mounting and seemingly limitless commitment, Holdings

honored its obligations to Certus and poured over $29,000,000 into Certus, which inured to the benefit of Certus' policyholders and South Texas healthcare providers.  The Plaintiff cannot now say that, despite committing over $29,000,000 to an investment that was originally supposed to be limited to $3,000,000, that Holdings undercapitalized Certus.

## CONCLUSION

For the reasons set forth in this reply and in Defendant's Motion for Summary Judgment, Holdings requests this Court to grant its Motion for Summary Judgment.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _Norton A. Colvin_
Norton A. Colvin, Jr. *by permission MCBatsell*
State Bar No. 04632100
Federal No. 1941
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Ph:     (956) 542-7441
Fax:    (956) 541-2170

John R. Wallace
Paul P. Creech
Wallace, Creech & Sarda, L.L.P.
Post Office Box 12065
Raleigh, North Carolina 27605
Ph:     (919) 782-9322
Fax:    (919) 782-8113

ATTORNEYS FOR DEFENDANT,
NOVOPHARM HOLDINGS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Novopharm Holdings, Inc.'s

Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment was served upon all

counsel of record, to-wit:

> Michael R. Cowen
> Michael R. Cowen, P.C.
> 765 East 7th Street, Suite A
> Brownsville, Texas 78520
> Attorneys for Plaintiff
>
> John Ventura
> Anthony Carrabba
> Law Offices of John Ventura, P.C.
> 7 North Park Plaza
> Brownsville, Texas 78521
> Attorneys for Plaintiff
>
> Jeffrey D. Roerig
> Roerig, Oliveira & Fisher, L.L.P.
> 855 West Price Road, Suite 9
> Brownsville, Texas 78520
> Attorneys for Defendants Certus Healthcare, L.L.C., David
> Rodriguez, and Dr. Ashok K. Gumbhir

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant

to the Federal Rules of Civil Procedure, on this the 8th day of December, 2000.

_____
Norton A. Colvin, Jr. *by permission*
*MCRstau*

*DEFENDANT'S REPLY TO PLAINTIFF'S SUMMARY JUDGMENT RESPONSE*        *PAGE 7 OF 7*

CitiPDF - www.fscsu.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and | ) | |
| On Behalf of All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. B-00-053 |
| | ) | |
| CERTUS HEALTHCARE, L.L.C., | ) | |
| NOVOPHARM LIMITED, DAVID | ) | |
| RODRIGUEZ, DR. ASHOK K. GUMBHIR | ) | |
| and NOVOPHARM HOLDINGS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AFFIDAVIT OF DAN YOUTOFF

I, Dan Youtoff, being first duly sworn hereby depose and say:

1.      I am a citizen and resident of Aurora, Ontario, Canada.  I am employed by Novopharm Limited (hereinafter "Limited"), a defendant in this action.  My position with Limited is Director of Treasury and Financial Services, and the responsibilities and duties arising from that position relate to the financial affairs of Limited and its subsidiaries.  Novopharm Holdings, Inc. (hereinafter "Holdings"), a Delaware corporation, is a subsidiary of Limited. Certus Healthcare, L.L.C. (hereinafter "Certus") was formerly a subsidiary of Limited.

2.      I have given testimony by deposition on the 4th day of October 2000.

3.      I have been provided with a copy of the Plaintiff's Response to the Motion for Summary Judgment of Novopharm Holdings, and by this affidavit wish to supplement the testimony given on October 4th, 2000.

◎

CutePDF - www.fastio.com

4.      In particular I have read the section of Plaintiff's Response entitled "Factual Background" and have observed that the Plaintiff has drawn certain incorrect inferences and has engaged in speculation with respect to the events and occurrences in issue.

5.      At all times prior to the sale of Certus in November 1999, Holdings was the majority or sole shareholder of Certus.  Holdings was also a manager of Certus, and it designated Leslie Dan and Ed McCormack as its representatives to participate in and observe the operations at Certus.

6.      Holdings satisfied the funding requirements placed upon it for Certus by the Operating Agreement and its subsequent amendments.  Holdings also fulfilled the requirements set by the Texas Department of Insurance.

7.      Holdings' funding to Certus, in compliance with the operating agreement and its amendments, was made promptly in accordance with the budget requests by Certus' management.

8.      The payment of $5.4 million by Holdings to the purchaser of Certus accounted for both payables of Certus on hand and payables to be received in subsequent months.  The amount was based on calculations made by Reden & Anders, actuarial consultants, recommended by the Texas Department of Insurance (hereinafter "TDI"), who estimated the payables to be owed by Certus for the period before and after the sale was finalized, but arising from the period prior to closing.  TDI approved the sale of Certus upon the terms set out in the agreement of sale.

9.      The goal and effect of the $5.4 million payment to Wellcare was to pay all payables of Certus for medical care provided to Certus members prior to the sale.

O

Case 1:00-cv-00053   Document 37   Filed in TXSD on 12/08/2000   Page 10 of 13

10.     Holdings, contrary to arguments by the Plaintiff in this case, maintains an identity separate from Limited.  It is true that Holdings has no individual employees.  Holdings, however, maintains corporate records, separate and apart from Limited.

11.     The information in this affidavit is true and correct and is given upon personal knowledge.

FURTHER AFFIANT SAYETH NOT.

This the 8ᵗʰ day of December, 2000.

> Dan Youtoff, Director of Treasury and
> Financial Services of Novopharm Limited

SWORN TO AND SUBSCRIBED
before me this ___8ᵀᴴ___ day
of December, 2000.

Notary Public
My Commission Expires: ___Nov 7, 2003___

John Kane Denike, Notary Public,
City of Toronto, limited to the
attestation of instruments and
the taking of affidavits, for
Novopharm Limited.
Expires November 7, 2003.



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and | ) | |
| On Behalf of All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. B-00-053 |
| | ) | |
| CERTUS HEALTHCARE, L.L.C., | ) | |
| NOVOPHARM LIMITED, DAVID | ) | |
| RODRIGUEZ, DR. ASHOK K. GUMBHIR | ) | |
| and NOVOPHARM HOLDINGS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT OF DAVID RODRIGUEZ</u>

I, David Rodriguez, being first duly sworn hereby depose and say:

1.    I am a citizen and resident of Dade County, Florida.  I was previously employed

with the Defendant Certus Healthcare, L.L.C., a defendant in this action, during the period

_____ through _____ as a member of the Board of Managers and served as a

member of the Board of Managers of Certus.

2.    I am also a defendant in this action and have given testimony by deposition on the

19th day of October 2000.

3.    I have been provided with a copy of the Plaintiff's Response to the Motion for

Summary Judgment of Novopharm Holdings, and by this affidavit wish to supplement the

testimony given on October 19th, 2000.

4.    In particular I have read the section of Plaintiff's Response entitled "Factual

Background" and have observed that the Plaintiff has drawn certain incorrect inferences and has

engaged in speculation with respect to the events and occurrences in issue.  The Plaintiff seems

to suggest by its response that the Plaintiff was injured by Certus' untimely payment of medical claims.

5.     I believe that the Plaintiff fails to understand that even if Certus did at times pay its providers more than thirty days following the rendering of a statement for services, such provider was forbidden by both the provider contract with Certus and by Texas law from declining to treat Certus members.

6.     Furthermore, as a matter of contract, Certus members were not entitled to see the physician of their choosing, but instead, through the Certus panel, to see qualified providers who had entered into a contractual relationship with Certus.

7.     During the time period in question, the Texas Department of Insurance prescribed standards for maintenance of panels of medical providers and at all times during my employment with Certus, Certus met the requirements imposed by the Texas Department of Insurance, as to primary care physicians, specialists, and hospital facilities.

8.     Therefore, as a consequence, if any provider failed or refused to see a Certus member, such provider failed or refused to see such member in violation of both contract and law, but such failure did not preclude the Certus member from obtaining care from a qualified provider, because Certus maintained a sufficient panel of qualified providers in accordance with Texas law.

9.     Certus, in its marketing, never represented to its members or prospective members that any particular physician or other provider would be available to provide care to Certus members, but only that Certus maintained a sufficient roster of providers to provide quality healthcare.  Rosters of contracted providers were printed from time to time with a proviso on the cover page indicating that providers were constantly being added and deleted.

CutePDF - www.tenita.com

10.     The information in this affidavit is true and correct and is given upon personal

knowledge.

FURTHER AFFIANT SAYETH NOT.


This the ___ day of December, 2000.


_____
                                    David Rodriguez


SWORN TO AND SUBSCRIBED
before me this _____ day
of December, 2000.


_____
Notary Public
My Commission Expires: _____