43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

MAR 2 0 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JOEL FLORES, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. B-00-053 |
| CERTUS HEALTHCARE, L.L.C.; NOVOPHARM LTD.; DAVID RODRIGUEZ; DR. ASHOK K. GUMBHIR; and NOVOPHARM HOLDINGS, INC., | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Novopharm Holdings, Inc.'s Motion for Summary Judgment (Docket No. 20) and Defendant Novopharm Ltd.'s Motion for Summary Judgment (Docket No. 41). For the reasons discussed below, the Court will deny these two motions.

## BACKGROUND

The following factual summary is derived from a reading of the aforementioned motions and pleadings. On March 1, 2000 plaintiff Joel Flores ("Flores") filed this purported class action on behalf of "all policyholders, beneficiaries and members of any health insurance plan or HMO from Certus Healthcare, L.L.C. from January 1, 1998 to the present" against Certus Healthcare, L.L.C. ("Certus"), Novopharm Ltd., David Rodriguez, Dr. Ashok K. Gumbhir, and Novopharm Holdings, Inc.

Flores purchased Certus health care insurance in February 1999, and attempted to purchase

a "Pulmo-Aide" treatment for his son on February 22, 1999. He went to eight pharmacies, several of which were on Certus' list of approved providers. However, all eight pharmacies refused to accept the Certus health insurance because Certus did not timely pay its bills. Thus, despite the fact that the treatment was covered under the Certus policy, Flores had to pay for it out of his own pocket.

Flores then brought suit, alleging that Certus sold policies and accepted premiums after it knew, or should have known, that it was unable to pay for covered medical services. Flores also alleges that Certus' marketing materials contained false statements that created the illusion that Certus was not only financially sound, but that Defendant Novopharm Ltd. would lend its billions of dollars to "improve the overall healthcare of South Texas."

Based on these alleged misrepresentation, Flores brought causes of action against defendants Novopharm Ltd. and Novopharm Holdings, Inc. for violation of RICO, the Texas Deceptive Trade Practices Act, fraud, and negligent misrepresentation. Flores maintains that Novopharm Ltd. "is vicariously liable for the misfeasance and malfeasance of Defendant Certus because Defendant Certus is Defendant Novopharm Ltd.'s ostensible agent." Plaintiff's Original Petition at Paragraph XI. Flores further alleges that "Defendants David Rodriguez, Dr. Ashok K. Gumbhir, and Novopharm Holdings, Inc. are vicariously liable for the misfeasance and malfeasance of Defendant Certus as members/shareholders of Certus because Certus is, and at all material times was, undercapitalized." Plaintiff's Original Petition at Paragraph XI. In their motions for summary judgment, Novopharm Holdings, Inc. and Novopharm Ltd. assert that there is no evidence to back Flores' allegations that they should be held vicariously liable for any actions/inactions of Certus.

CREATION AND FUNDING OF CERTUS HEALTHCARE, L.L.C.

Novopharm Ltd.'s business is the wholesale manufacture and distribution of prescription and

2

non-prescription pharmaceuticals. Its pharmaceutical operations in the United States are conducted by its subsidiaries which are owned solely by Novopharm Holdings, Inc., a Delaware corporation. Each subsidiary is operated through a separate legally incorporated entity, each with its own board of directors, officers, and employees.

The creation of Certus Healthcare, L.L.C. in 1995 came after weeks of negotiation and arms-length discussion between David Rodriguez and the Chairman of Novopharm Ltd. On November 30, 1995, Total Healthcare Plans (Rodriguez's company) and Novopharm Ltd. entered into a Contribution and Subscription Agreement, which detailed the rights, duties, and obligations of the parties in the formation and capitalization of Certus Healthcare, L.L.C.

Novopharm Ltd. agreed to contribute $1,400,000.00 to the joint venture for a 51% ownership interest. Total Healthcare Plus agreed to contribute $150,000.00 for a 49% ownership interest. Novopharm Ltd. also agreed to make additional capital contributions up to $1,100,000.00 in the initial operation of the HMO, and Total Healthcare Plans agreed to contribute $1.00 for every $10.00 contributed by Novopharm Ltd. Novopharm Ltd. agreed to make, and did make through Novopharm Holdings, Inc., a cash deposit of $500,000.00 with the Texas Department of Insurance in order to comply with state licensing requirements.

On December 29, 1995 Novopharm Ltd. transferred and assigned all of its rights and interests in the new HMO to Novopharm Holdings, Inc. On that date, Total Healthcare Plans and Novopharm Holdings filed a Certificate of Organization with the Texas Secretary of State, incorporating the new joint venture, and also entering into a limited liability company operating agreement. The initial board of directors included David Rodriguez, Dr. Ashok K. Gumbhir, and Novopharm Holdings, Inc. Rodriguez became President and Chief Executive Officer of Certus and was responsible for hiring

3

other management level employees and running the business.

From the beginning, it was clear that, in order for Certus to operate, Novopharm Holdings would have to fund more than was required by the Contribution and Subscription Agreement. In 1996, at the demand of the Texas Department of Insurance, Novopharm Holdings guaranteed its commitment of an additional $3,000,000.00 in funding. Total Healthcare Plans also agreed to contribute $260,000.00 in order to meet capital needs of the HMO through 1997. The Operating Agreement was amended, at the request of the Texas Department of Insurance ("TDI"), to state that neither member would have the right to withdraw or reduce its capital contributions nor to take the profits from the business which might jeopardize the HMO's licensing or status with the Texas Department of Insurance.

Certus began selling policies in October 1996, and very quickly began losing money. By April 1998, Certus' net worth was of concern to the TDI. As a result, Novopharm Holdings and Certus entered into the Second Amendment to the Operating Agreement in May of 1998, which provided that Novopharm holdings would guarantee the commitment of additional funds to Certus for the "purpose of meeting the minimum anticipated requirement of the HMO and for the purpose of preserving the HMO's financial viability though the period ending December 31, 1999." At this time Novopharm Holding's contributions to Certus exceeded $6,900,000.00. By December 1998 its contributions totaled $13,850,000.00. Despite these contributions, at the end of 1998 Certus had a net worth of negative $5,500,191.00. On April 29, 1999, the TDI put Certus under administrative oversight. On August 13, 1999, due to Certus' ever-worsening condition, the TDI placed Certus under supervision. By November 1999, when Novopharm Holdings sold Certus, the HMO had an approximate net worth of negative $5,400,000.00. Certus was sold to Certus Health Management,

4

Inc., a subsidiary of Wellcare HMO, Inc., in November 1999. Novopharm Holdings agreed to contribute an additional $5,400,000.00 to cover Certus' existing liabilities at the time of its sale to Wellcare. Novopharm Holdings' capital contributions to Certus totalled $26,414,256.00 as of December 1999.

## STANDARD OF PROOF

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The applicable substantive law identifies those facts that are material and only disputes about those facts will preclude the granting of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 226 (5th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of fact for trial. *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Elliott v. Lynn*, 38 F.3d 188, 190 (5th Cir. 1994) (*citing Anderson*, 477 U.S. at 249). All reasonable

doubts and inferences must be decided in the light most favorable to the party opposing the motion. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). Nonetheless, it takes more than "some metaphysical doubt as to the material facts" to satisfy this burden. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). The nonmoving party cannot avoid summary judgment with only conclusory allegations or unsubstantiated assertions. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Novopharm Holdings, Inc. and Novopharm Ltd. state in their motions for summary judgment that they should not be held vicariously liable for any actions/inactions of Certus. The Novopharm defendants point out that Certus Healthcare is a limited liability company, and as such, has the powers of a corporation under the Texas Business Corporations Act and those of a limited partnership under the Texas Revised Limited Partnership Act. *See* TEX. REV. CIV. STAT. ANN. Art. 1528n § 2.01 (West 1997). Consequently, members of a limited liability company, such as the Novopharm defendants, are not proper parties to proceedings by or against a limited liability company, except where the object is to enforce a member's right against it or liability to the limited liability company. *See id.* at § 4.03C.

Flores, on the other hand, claims that there exist grounds to disregard the corporate fiction. Texas provides three broad theories of corporate disregard. The corporate veil is pierced when: (1) the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal

6

purpose, and (3) the corporation is used as a sham to perpetrate a fraud. *See Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1131-32 (5th Cir. 1988); *Castleberry v. Branscum*, 721 S.W.2d 270, 272-73 (Tex.1986), *superseded on other grounds by* TEX. BUS. CORP. ACT ANN. Art. 2.21A (West Supp. 1992). Flores seeks to recover against the Novopharm defendants under the third theory, "sham to perpetrate a fraud."[1] Specifically, Flores claims that the delayed and inadequate funding of Certus, taken together with Novopharm's involvement in Certus' operations and the use of Novopharm's name in Certus' marketing, justify piercing the corporate veil.

The underlying purpose of corporate disregard generally is to "prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice." *See Castleberry*, 721 S.W.2d at 273. The focus here is on some inequitable result for the claimant because of something about the corporate form. *See Pan Eastern*, 855 F.2d at 1133. *Castleberry* is emphatic that the "sham to perpetrate fraud" category allows corporate disregard in a much broader range of cases than cases of fraud strictly speaking. *See id.* The opinion clings at times to the term "constructive" fraud. Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *See Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). However, the reasoning in *Castleberry* goes even further:

> The basis used here to disregard the corporate fiction, a sham to perpetrate a fraud, is separate from alter ego. It is sometimes confused with intentional fraud; however,

---

[1] Flores also urges "undercapitalization" as a ground for disregarding the corporate fiction. However, in practice undercapitalization is merely an indicator of other grounds. *See Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1287 fn. 15 (5th Cir. 1988); *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1133 (5th Cir. 1988).

"[n]either fraud nor an intent to defraud need be shown as a prerequisite to disregarding the corporate entity; it is sufficient if recognizing the separate corporate existence would bring about an inequitable result."

*Castleberry*, 721 S.W.2d at 272-73 (citations omitted). The Texas Supreme Court went on to emphasize that the standard for corporate disregard is whether honoring corporate separateness would result in "inequity" or "injustice," that the purpose "is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice, and that purpose should not be thwarted by adherence to any particular theory of liability." *Id.* at 273. Importantly, *Castleberry* specifically holds that the question of injustice or inequity is a question of fact for the jury. *See Pan Eastern*, 855 F.2d at 1133.

The only limitation on this broad strand of corporate disregard is that the focus is on injustice or unfairness to the claimant caused by the corporation and its owners. *See id.* The unfairness must be something greater than the mere failure to recover a full measure of damages; for example, the running of the statute of limitations as to a tort victim who simply sued the wrong related entity is not enough. *See id.*; *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372 (Tex. 1984). In contract cases (or in any case based on deliberate acts), the inequity frequently comes from reasonable reliance on the financial backing of the owners. Without reliance, the contract claimant cannot avoid the risk of insolvency that it originally accepted as part of the bargain. *See, e.g., Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex. 1968); *Edwards Co. v. Monogram Industries*, 730 F.2d 977 (5th Cir. 1984) (en banc).

In the instant case, Flores provided summary judgment evidence that Certus used Novopharm's name in its marketing to demonstrate financial stability. Certus referred to Novopharm as its "financial partner." One marketing document included a section entitled "Meet

8

our Corporate Partner," which stated, "In addition to our team of seasoned professionals, Certus is built on a solid foundation of financial strength, which includes the investment support of our corporate partner, Novopharm Limited." The document added, "Novopharm will continue its efforts toward helping people achieve better health with its commitment to Certus and to South Texas." Another marketing document, entitled "Certus HealthCare at a Glance," stated:

> While Certus is a local company with its management team based here in South Texas, we are affiliated with some of the largest and most respected healthcare corporations in the world. Most prominent among them is Novopharm Limited, a multi-billion dollar pharmaceutical manufacturer with over 3,000 employees worldwide. Novopharm is the primary shareholder of Certus and is committed to its financial success and its mission to improve the overall healthcare of South Texas.

The evidence, when viewed in the light most favorable to Flores, shows that Novopharm's name was employed by Certus to create the appearance of financial stability and that Flores relied on such representations. Further, Flores has presented summary judgment evidence that Certus was undercapitalized despite assurances by Novopharm that it would fully fund Certus. This undercapitalization led to Certus' inability to timely pay for covered services, which in turn resulted in a loss of health insurance benefits for Flores and other class members. At this early stage of trial, it cannot be said that a reasonable jury could not find that to honor corporate separateness would result in inequity or injustice. In the instant case, whether a corporate fiction should be disregarded is a question of fact to be determined by the jury.[2]

---

[2]*See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir.1991); *Bower v. Bunker Hill Co.*, 675 F.Supp. 1254 (E.D.Wash.1986), *American Protein Corp. v. A.B. Volvo*, 844 F.2d 56, 59 (2d Cir.) ("the issue of corporate disregard is generally submitted to the jury"), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir.1980) (whether to disregard the corporate entity "is a fact question which should ordinarily be submitted to the jury"); *Key v. Liquid Energy Corp.*, 906 F.2d 500, 503 (10th Cir.1990) ("whether a separate corporate structure was adopted for the purpose of fraud or illegality is ordinarily a fact question for the jury"); *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 n. 5 (5th Cir.1980) ("this Court holds that the issue of corporate entity disregard is one for the jury"); *Baker's Aid v. Hussmann Foodservice Co.*, 730 F.Supp. 1209, 1220 (E.D.N.Y.1990) ( "[w]hether a parent's

Accordingly, Defendant Novopharm Holdings, Inc.'s Motion for Summary Judgment (Docket No. 20) and Defendant Novopharm Ltd.'s Motion for Summary Judgment (Docket No. 41) are **DENIED**.

DONE at Brownsville, Texas, this 16th day of March, 2001.

John Wm. Black
United States Magistrate Judge

---

the corporate veil is characterized as an equitable remedy, it rests on a factual inquiry; as a result 'the issue of corporate disregard is generally submitted to the jury' "); *Cantiere DiPortovenere Piesse, S.P.A. v. Kerwin*, 739 F.Supp. 231, 236 (E.D.Pa.1990) (" 'the issue of corporate disregard is generally submitted to the jury' "); *Najran Co. v. Fleetwood Enters., Inc.*, 659 F.Supp. 1081, 1096 (S.D.Ga.1986) ("the alter ego inquiry is 'a fact question which should ordinarily be submitted to the jury' or decided after a full hearing"; (citations omitted)); *Kashfi v. Phibro-Salomon, Inc.*, 628 F.Supp. 727, 735 (S.D.N.Y.1986) ("the question of corporate control is a question of fact that should ordinarily be submitted to fact finder"); *Horowitz v. Schneider Nat'l, Inc.*, 708 F.Supp. 1579, 1583 (D.Wyo.1989) ( "[p]laintiff also has a burden to demonstrate that the use of the corporate structures will result in fraud or illegal or inequitable conduct ... the Court recognizes that this usually raises a fact question for the jury").