
United States District Court
Southern District of Texas
FILED

SEP 2 6 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and on Behalf of All Others Similarly Situated | § § § | |
| V. | § § | CIV. ACTION NO. B-00-53 |
| CERTUS HEALTHCARE, L.L.C., NOVOPHARM LIMITED, and NOVOPHARM HOLDINGS, INC. | § § § § | CLASS ACTION |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW Joel Flores, Individually and On Behalf of All Others Similarly Situated, and files this his Plaintiff's Motion for Leave to File Amended Complaint. In support of this motion, Plaintiff would show the Court as follows.

Plaintiff desires to file a First Amended Complaint. A copy of the First Amended Complaint that Plaintiff would like to file is attached as Exhibit A.

The First Amended Complaint more clearly sets forth the facts that Plaintiff alleges against Defendants, and more clearly sets out the elements of his causes of actions. Plaintiff has added numerous details that he has discovered during the discovery process. The First Amended Complaint also adds a third-party beneficiary/breach of contract cause of action, the existence of which Plaintiff discovered during discovery.

The First Amended Complaint also narrows the definition of the proposed Class. Plaintiff wishes to amend the Class definition based on information he obtained in discovery. Finally, the First Amended Complaint pleads the causes of action in a manner that clarifies that they are certifiable as a class action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court GRANT his motion and allow him to file his First Amended Complaint.

Respectfully submitted,

MICHAEL R. COWEN, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

By: _____
Michael R. Cowen, P.C.
Federal I.D. No. 19967
Texas Bar No. 00795306

Conrad Bodden
Federal I.D. No. 21003
Texas Bar No. 00796220
LAW OFFICES OF JOHN VENTURA, P.C.
62 E. Price Road
Brownsville, Texas 78521
Tel. No. (956) 546-9398
Fax No. (956) 542-1478

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the above and foregoing document has be forwarded via certified mail, return receipt requested to:

Jeffrey D. Roerig
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, Texas 78520

Norton A. Colvin, Jr.
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 E. Van Buren Street
Brownsville, Texas 78520

John R. Wallace
Wallace, Creech & Sarda, L.L.P.
UCB Plaza
3605 Glenwood Avenue, Suite 240
Raleigh, North Carolina 27612

on this 26th day of September 2001.

Michael R. Cowen

## CERTIFICATE OF CONFERENCE

I, Michael R. Cowen, hereby certify that I have discussed this motion with opposing counsel on September 26, 2001. Jeffrey D. Roerig, counsel for Defendant Certus Healthcare, L.L.C., stated that he was not opposed to this motion. John Wallace, counsel for Novopharm Limited and Novopharm Holdings, Inc., stated that he needed to discuss the issue with his client; therefore, at this time he is opposed to this motion.

_____

Michael R. Cowen

# Exhibit A

CVisPDF – www.fasino.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and on | § | |
| Behalf of All Others Similarly Situated | § | |
| | § | CIV. ACTION NO. B-00-53 |
| V. | § | |
| | § | |
| CERTUS HEALTHCARE, L.L.C., | § | |
| NOVOPHARM LIMITED, | § | CLASS ACTION |
| and NOVOPHARM HOLDINGS, INC. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JOEL FLORES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS

SIMILARLY SITUATED, and files this his Plaintiff's First Amended Complaint, complaining of

Defendants CERTUS HEALTHCARE, L.L.C., NOVOPHARM LIMITED, and NOVOPHARM

HOLDINGS, INC. For cause of action, Plaintiff would show unto the Honorable Court as follows:

### PARTIES

1.1     Plaintiff is an individual residing in Cameron County, Texas. He brings this action both on

his own behalf and as a class action on behalf of the Class, as defined below.

1.2     Defendant Certus Healthcare, L.L.C. is a Texas limited liability company with its principal

place of business in Hidalgo County, Texas. Defendant has recently changed its name to

Wellcare Health Plans of Texas, L.L.C. but is still the same company.

1.3     Defendant Novopharm Limited is a Canadian Company doing business in Texas.

1.4     Defendant Novopharm Holdings, Inc. is a Delaware corporation doing business in Texas.

## JURISDICTION AND VENUE

2.1     Venue is proper in the Southern District of Texas because Defendants are subject to personal

jurisdiction in the district.

## CLASS ALLEGATIONS

3.1     This action is brought as a class action under Fed. R. Civ. P. 23.  Plaintiffs seek certification

on behalf of a class of Certus policyholders who received a health insurance plan who, due

to contractual breaches, material misrepresentations, and omissions, purchased an HMO

membership in Certus that was worth less than the policy represented to them.

3.2     This action is properly brought as a class action for the following reasons:

　　　　(a)     The Class consists of tens of thousands of persons and is thus so numerous
　　　　　　　that joinder of all members, whether otherwise required or permitted, is
　　　　　　　impracticable;

　　　　(b)     There is a well-defined community of interest in the questions of law or fact
　　　　　　　affecting the Class, which predominate over any questions affecting only
　　　　　　　individual members, including:

　　　　　　　(i)     Whether Certus had a pattern or practice of not timely paying claims;

　　　　　　　(ii)    Whether Certus had a pattern or practice representing that it is
　　　　　　　　　　financially sound and capable of paying claims when in fact it is not;

　　　　　　　(iii)   Whether Certus' pattern and practice of failing to disclose its
　　　　　　　　　　financial condition constituted mail fraud;

　　　　　　　(iv)    Whether Certus violated the RICO act in its pattern of fraudulent
　　　　　　　　　　omissions, misrepresentations and mail fraud;

　　　　　　　(v)     Whether Certus committed common law fraud in its pattern of
　　　　　　　　　　fraudulent omissions and misrepresentations;

　　　　　　　(vi)    Whether Certus' misfeasance constituted negligent misrepresentation;

　　　　　　　(vii)   Whether Certus' violated the Texas DTPA in its pattern of omissions,

CM/PDF - www.faxio.com

misrepresentations, and failure to timely pay claims;

(viii)   Whether Certus violated Section 21.21 of the Texas Insurance Code in its pattern of omissions, misrepresentations, and failure to timely pay claims;

(ix)   Whether Certus breached its contract with the Class in its failure to timely pay claims.

(x)   Whether Certus was undercapitalized, which would impose personal liability upon its members.

(xi)   Whether Certus was the ostensible agent of Defendants Novopharm Limited and Novopharm Holdings, Inc.

(xii)   Whether Defendant Novopharm Limited failed to adequately fund Certus;

(xii)   What the measure of the Class' damages—the difference between the value of the policy promised and the policy received—is;

(xiv)   Whether Defendants acted with malice and are thus liable for punitive damages;

(xv)   Whether Certus underreported or understated its medical loss ratio;

(xvi)   Whether Novopharm knew that Certus was underreporting or understating its medical loss ratio;

(xvii)   Whether Certus committed fraud by underreporting or understating its medical loss ratio;

(xviii)   Whether Plaintiff and the Class are intended third-party beneficiaries of the Second Amended Operating Agreement;

(xix)   Whether Novopharm Limited broke its agreement with the Texas Department of Insurance by failing to adequately fund Certus;

(xx)   Whether Plaintiff and the Class are intended third-party beneficiaries of the agreement between Novopharm Limited and the Texas Department of Insurance;

(xxi)   Whether Novopharm Limited committed fraud by using medical loss

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 3 OF 26**

ratios it knew to be understated in order to provide less funding to Certus that was required by its agreement with the Texas Department of Insurance;

(xxii)   Whether the insurance policies that Plaintiff and the Class received were worth less than the policies that Certus represented they would receive;

(xxiii)  Whether Certus violated the Texas Insurance Code by submitting reports to the Texas Department of Insurance that were misleading because of Certus' using underaccrued medical loss ratios in determining its liabilities; and

(xxiv)   Whether Novopharm Holdings, Inc. is the alter ego of Novopharm Limited.

(c)   The claims asserted by Plaintiff are typical of the claims of members of the Class;

(d)   Plaintiff will fairly and adequately protect the interests of the Class in that, among other things, he has no interests antagonistic to those of the other members of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation as counsel; and

(e)   A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(i)   Given the size of individual Class Members' claims, few, if any, Class Members could afford to seek legal redress individually for the wrongs Defendants committed against them;

(ii)   When the liability of Defendants has been adjudicated, claims of all members of the Class can be determined by the Court;

(iii)  This action will cause an orderly and expeditious administration of the Class claims, promote economies of time, effort and expense, and insure uniformity of decisions;

(iv)   This action presents no difficulties that would impede its management by the Court as a class action.

3.3   Accordingly, Plaintiffs bring this action on behalf of themselves and all members of the class

defined as follows:

> **All policyholders, beneficiaries and members of any health insurance plan or HMO from Certus Healthcare, L.L.C. from May 29, 1998 to November 2, 1999.**

Excluded from the Class are: (a) the Defendants herein, and the directors and officers thereof (b) the subsidiaries, parents, and affiliates of Defendant, and the directors and officers thereof; (c) any person or entity in which any excluded person has a controlling interest; (d) members of the immediate family of any of the foregoing, if a natural person; (e) the legal representatives, heirs, successors-in-interest, and assigns of any excluded person; (f) the judge presiding over this case; (g) any person or entity related by any consanguinity or affinity within the third degree to the judge presiding over this case.

3.4   Further, pursuant to Federal Rule of Civil Procedure 23, the Class is divided into two subclasses, as follows:

(A)   **The ERISA Plan Subclass**.  All Class members whose policy or plan with Certus constitutes an ERISA plan.

(B)   **The Non-ERISA Subclass**.  All Class members whose policy or plan with Certus does not constitute an ERISA plan.

## FACTS

**A.    Introduction**

4.1   Plaintiff and the Class have filed this case because they received insurance policies that were worth less than the policies they bargained for. The reason for this diminished value was that Certus, the HMO from which Plaintiff and the Class bought policies, was so financially unsound that it was unable to timely pay claims. Certus' failure to pay healthcare providers

resulted in doctors and pharmacies refusing to accept Certus health insurance.

4.2     Novopharm Holdings, Inc., and its parent, Novopharm Limited, bear full responsibility for the damages that Plaintiff and the Class suffered. Certus' financial problems were well known to the Texas Department of Insurance, so much so that the TDI would not have allowed Certus to operate without some sort of financial guarantee. The Novopharm entities, which constituted the major investors in Certus, provided that guarantee. On May 29, 1998, they agreed to provide sufficient funds to Certus so that Certus would have a positive net worth, and that Certus could be current on its obligations. The Novopharm entities failed to do so. As a result, Certus did not have the money it needed to pay claims.

4.3     Defendants, acting with full knowledge of Certus' precarious financial condition, continued to market Certus' health insurance. Worse, in their marketing materials, they not only failed to disclose Certus' true financial condition, but actually represented that Certus was financially sound, and that it was backed by a multibillion dollar pharmaceutical manufacturer, Novopharm Limited. Defendants also violated the Texas Insurance Code by failing to inform Certus' policyholders of the HMO's deteriorating financial condition.

**B.      The Novopharm Entities**

4.4     Novopharm Limited is a Canadian pharmaceutical company.

4.5     Novopharm Limited does business in the United States through its wholly-owned holding company, Novopharm Holdings, Inc.

4.6     Novopharm Holdings, Inc. was, from the formation of Certus until its sale in November 1999, either the majority shareholder or sole shareholder of Certus.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                **PAGE 6 OF 26**

CHsPDF - www.fsiolo.com

### C.    Novopharm Agreed To Fully Fund Certus

4.7    Novopharm Holdings' role in Certus was always to provide funds.

4.8    In 1995, David Rodriguez, along with Orlando Julian and John Phillips, decided that they

wanted to form an HMO in South Texas.

4.9    However, they did not have the capital needed start up an HMO.

4.10    Therefore, they sought to have Novopharm provide Certus with the financial backing they

needed.

4.11    Rodriguez met with Leslie Dan, chairman of Novopharm Limited, and convinced

Novopharm Limited to invest in Certus.

4.12    Novopharm Limited initially agreed to invest $1.4 million in Certus, and Rodriguez's group,

Total Health Care Plans, Inc. ("THCP"), agreed to invest $150,000.00.

4.13    In return, Novopharm Limited received a 51% equity ownership in Certus.  Novopharm also

could, but was not required to, make an additional $1.1 million in contributions.

4.14    Novopharm Limited later assigned its interest in Certus to its holding company, Novopharm

Holdings.

4.15    From the beginning, it was clear that, in order for Certus to operate, Novopharm Holdings

would have to fund more than was required by the Contribution and Subscription Agreement.

4.16    In fact, the Texas Department of Insurance would not approve Certus' application to operate

as an HMO unless Novopharm agreed to increase its funding commitment.

4.17    Therefore, Novopharm Holdings and THCP entered into a First Amendment to Operating

Agreement for Certus HealthCare, L.L.C., which firmly required Novopharm Holdings to

contribute $3,000,000.00 to Certus.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                      **PAGE 7 OF 26**

4.18    However, even this amount was insufficient.  If Novopharm Holdings had not contributed additional funds, Certus would not have been able to continue operating.

4.19    Certus began selling policies in October 1996, and very quickly began losing money.

4.20    As a result, Certus had a negative net worth during most of its existence.

4.21    Even though Novopharm contributed money to Certus, it did not contribute enough.  As a result, Certus often had a negative net worth.

4.22    By April 1998, Certus' net worth was "of concern" to the Texas Department of Insurance ("TDI").

4.23    As a result, executives from Certus and Novopharm met with the TDI.

4.24    Ed McCormack from Novopharm was present to show that Novopharm would provide money and financial stability to Certus.

4.25    Novopharm then formalized its agreement to fully fund Certus when it entered into the Second Amendment to the Operating Agreement.

4.26    The reason that Novopharm entered into the Second Amendment was that the TDI requested that they do so; the TDI would not have allowed Certus to continue operations if Novopharm declined the request.

4.27    The Second Amendment obligated Novopharm Holdings to "make such contributions to Certus HealthCare, L.L.C. . . . for the purpose of meeting the minimum anticipated requirements of the HMO and for the purpose of preserving the HMO's viability through the period ending December 31, 1999."

4.28    That meant that Novopharm was required to provide sufficient funding so that:  (1) Certus would not have a negative equity position; and (2) Certus would be current with its

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    **PAGE 8 OF 26**

obligations to Doctors and Hospitals.

4.29   The Second Amendment memorialized Novopharm Limited's agreement with the TDI, which agreement constituted a contract.

4.30   Plaintiff and the Class were intended third-party beneficiaries of that contract.

4.31   Certus failed to meet the obligations it undertook in the Second Amendment.

4.32   In a memorandum dated June 29, 1998, Dan Youtoff of Novopharm wrote:

> 1. Certus has incurred losses of approximately $2.5 million to the end of May 1998. This is a cash loss and contribution of a similar amount is required to keep them in a solvent position.
>
> 2. Certus' claims payable exceed the cash available for payment by approximately $2.5 million. This deficiency is resulting in payments to Doctors and Hospitals being made well past their due date. [These] late payment[s] of obligations are hindering David's attempts to negotiate lower rates with the Doctors and Hospitals.
>
> 3. We have committed to the Texas Department of Insurance (TDI) in writing that we will provide adequate financial support to Certus to ensure compliance with their minimum solvency requirements to the end of December 31, 1999. These minimum solvency requirements include that the HMO must not have a negative equity position and must be current with its obligations to Doctors and Hospitals. At May 31, 1998 Certus had a net deficit of $1,417,746 and is not current with its obligations. . . .

4.33   A few months later, on October 1, 1998, Dan Youtoff wrote another memo showing that Novopharm was not meeting its financial obligations. He wrote:

**Operation Difficulties – Funding**

Certus' lack of funding and slow payment to medical providers has resulted in two new problems. The first being that the "Weiss Ratings" guide to HMO's and Health Insurers have given Certus an E- (lowest rating possible). . . .

Certus' slow payment of medical providers is well known in its service areas. . . .

Novopharm has committed to the [TDI] to fund Certus operating losses.

**Funding Summary**

| | |
|---|---:|
| Certus' Fiscal 1998 losses to [8/31/98] | $5,932,342 |
| Novopharm Funding of Fiscal 1998 Losses to September 30, 1998 | <u>$3,025,000</u> |
| **Shortfall** | **<u>$2,907,342</u>** |

It is this shortfall that is causing Certus the problems described earlier in this memo.

4.34   As this memorandum clearly stated, Certus was unable to timely pay medical providers because Novopharm did not provide the funding it promised to provide.

4.35   The TDI was not the only entity concerned with Certus' financial instabiltiy.  LaMar and Phillips, Inc., Certus' reinsurer, was also concerned.

4.36    Certus needed reinsurance to operate.

4.37   However, because of Certus' losses, the reinsurer would not write Certus a policy unless Novopharm agreed to fund Certus' deficit for 12 months.

4.38   Therefore, on September 11, 1997, Novopharm Limited wrote a letter to LaMar & Phillips, Inc. stating:

> I'm writing to confirm that Novopharm Limited is a partner in Certus HealthCare, L.L.C. and that our ownership percentage remains unchanged from when the company was incorporated.  I can also confirm that Novopharm is committed to fund the operation's deficit for the next twelve months.

4.39   Although Novopharm admittedly contributed several million dollars to Certus, it never committed the amounts it agreed to invest when it signed the Second Amendment.

4.40   At the end of 1998, Certus' net worth was negative $5,500,191. This financial condition was

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                            **PAGE 10 OF 26**

CItdPDF - www.texisi.com

even worse than the negative $1,678,432 net worth at the end of 1997.

4.41    That means that, even though Novopharm agreed to fully fund Certus' deficit, Certus was actually worse off financially that it was before Novopharm entered into the Second Amendment.

4.42    On April 29, 1999, due to Certus' "hazardous financial condition," the TDI put Certus under administrative oversight.

4.43    Defendants never informed the Class that Certus' financial condition was hazardous.

4.44    Defendants never informed the Class that the TDI put Certus under administrative oversight.

4.45    On August 13, 1999, due to Certus' ever-worsening condition, the TDI placed Certus under supervision.

4.46    Defendants never informed the Class thet the TDI placed Certus under supervision.

4.47    By November 1999, when Novopharm sold Certus, the HMO had a net worth of negative $5.4 million.

4.48    As a result, Novopharm *paid* the purchaser of Certus $5.4 million to take Certus off its hands.

4.49    If Novopharm had met its obligation to contribute enough money to keep Certus' net worth positive, it would not have had to pay the purchaser to take the HMO.

4.50    However, by delaying the funding of Certus' deficit until after its sale, Novopharm did not give Certus enough funding to timely pay claims.

**D.    Novopharm's Name Was Used In Certus' Marketing**

4.51    Certus used Novopharm's name in marketing.

4.52    It called Novopharm Certus' "financial partner."

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 11 OF 26**

4.53   One marketing document included a section entitled "Meet Our Corporate Partner," which

stated:

> In addition to our team of seasoned professionals, Certus is built on a solid foundation of financial strength, which includes the investment support of our corporate partner, Novopharm Limited. Novopharm is a multi-national pharmaceutical manufacturer, distributor, and research entity with worldwide sales in excess of one half billion dollars annually.
>
> Founded in 1976 by Leslie Dan, Chairman and Chief Executive Officer, Novopharm employes over 3,000 persons worldwide. Novopharm has demonstrated a philosophy of caring by giving millions of dollars to charities each year. In addition to donating needed medicines and funding, Novopharm currently is working to develop new and better drugs, including ground-breaking achievements in the treatment of cancer.
>
> Novopharm will continue its efforts toward helping people achieve better health with its commitment to Certus and to South Texas.

4.54   Another marketing document, entitled "Certus HealthCare at a Glance," stated:

> While Certus is a local company with its management team based here in South Texas, we are affiliated with some of the largest and most respected healthcare corporations in the world. Most prominent among them is Novopharm Limited, a multi-billion dollar pharmaceutical manufacturer with over 3,000 employees worldwide. Novopharm is the primary shareholder of Certus and is committed to its financial success and its mission to improve the overall healthcare of South Texas.

4.55   Novopharm knew that its name was being used, and approved of its use.

4.56   The reason that Certus used Novopharm's name in marketing documents was to let potential

customers know that Certus—due to Novopharm's financial backing—would "have the

financial wherewithal to operate."

**E.    Novopharm's Involvement In Certus' Operations**

4.57   Novopharm's involvement in Certus was more than that of a mere investor.

4.58   At least three Novopharm personnel—Leslie Dan, Ed McCormack, and Dan Youtoff—made

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                               **PAGE 12 OF 26**

numerous trips to McAllen to monitor Certus.

4.59    Further, McCormack and Youtoff participated in Certus's meetings with the TDI.

4.60    Dan and McCormack were signatories on Certus' checking account.

4.61    At one point, Certus was not allowed to hire any employees without Dan's permission.  In

fact, Youtoff even met with the Hidalgo County Insurance Committee to help Certus get an

account.

**F.    Novopharm Holdings, Inc. Is the Alter Ego of Novopharm Limited**

4.62    Novopharm Holdings, Inc. does not have any employees or bank accounts.

4.63    It does not even maintain separate corporate records with regard to the Novopharm

investment in Certus.

4.64    Novopharm Holdings, Inc. is the alter ego of Novopharm Limited.

4.65    Under the circumstances of this case, the corporate veil of Novopharm Holdings, Inc.

constitutes a sham to perpetrate a fraud.

**G.    Obligations of an HMO**

4.66    The Texas Insurance Code imposes certain obligations on an HMO.

4.67    The three obligations that are relevant in this case are the obligation to timely pay claims, the

obligation to refrain from using untrue or misleading marketing materials, and the obligation

to disclose material adverse changes in the HMO's financial condition.

4.68    As an HMO, Certus was obligated to timely pay for beneficiaries' covered medical treatment.

4.69    Texas Insurance Code Article 20A.09(j) provides:

> . . . A health maintenance organization shall make payment to a physician or
> provider for covered services rendered to enrollees of the health maintenance
> organization no later than the 45th day after the date a claim for payment is

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 13 OF 26**

received . . . or, if applicable, within the number of calendar days specified
by written agreement between the physician or provider and the health
maintenance organization.

4.70    Certus is also forbidden from making misrepresentations in its marketing materials.  Texas

Insurance Code Article 21A.11(d) provides:

(d) No health maintenance organization, or representative thereof, may cause
or knowingly permit the use or distribution of prospective enrollee
information which is untrue or misleading.

4.71    The Texas Insurance Code also required Certus to disclose serious financial problems to its

insureds.  Texas Insurance Code Article 21A.11(e) provides:

Every health maintenance organization shall provide to its enrollees
reasonable notice of any material adverse change in the operation of the
organization that will affect them directly.

4.72    Certus violated all three of these statutory obligations.

4.73    It failed to timely pay claims, it make false and misleading statements regarding its financial

condition in its marketing materials, and it never notified its insureds of its financial

problems.

## H.    **Certus' Fraudulent Marketing**

4.74    Certus' distributed a marketing brochure to potential customers, including the Class.

4.75    In the case of individual customers, the brochure was given to that customer.

4.76    With respect to group policies, such as businesses and governmental entities, the brochure

was given to the person or persons within that entity who made insurance purchasing

decisions.

4.77    This brochure falsely stated that Certus was "built on a foundation of financial strength. . .

.''

4.78    It also stated, "[W]e have the experience, the strength, and the medical knowledge to deliver healthcare to the region like no other company has ever done: with dedication, concern, efficiency, compassion, and quality."

4.79    Further, it stated, "Certus has the financial resources to ensure dependability, stability, and a long and prosperous presence in South Texas."

4.80    These statements were false, and were designed to create the false impression that Certus had the ability to timely pay claims.

I.    **Defendants Understated Certus' Losses to the TDI**

4.81    Defendants knowingly used misleading and inaccurate accounting techniques to paint a false picture of Certus' financial status.

4.82    Each month, Certus collected a certain amount of premium dollars and its policyholders received a certain amount of treatment.

4.83    Because Certus would not receive all of the bills from the treatment that its members received in the month it was received, it was necessary for Certus to estimate the amount of payments it would have to make.

4.84    It did this by using a medical loss ratio, which was the ratio between the amount of premiums collected and the amount of claims to be paid.

4.85    Certus consistently understated its medical loss ratio, and the Novopharm Defendants had actual knowledge that it was doing so.

4.86    This understatement had two effects: (1) it made Certus' financial condition appear better than it actually was in documents submitted to the Texas Department of Insurance; and (2)

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 15 OF 26**

it reduced the amount of payments that the Novopharm defendants had to make to Certus (because the payments were based on the figures generated using the inaccurate medical loss ratios).

## J.  Effects on the Class

4.87   Due to its financial problems, Certus was unable to pay for its beneficiaries' covered medical treatment.

4.88   As a result, many health care providers stopped accepting Certus insurance.

4.89   Certus continued to sell policies and accept premiums after it knew, or in the alternative should have known, that it would be unable to pay for covered medical services.

4.90   The illusion created by Defendants also violated Certus' obligations under Texas Insurance Code Article 21A.11(e), which provides:

> Every health maintenance organization shall provide to its enrollees reasonable notice of any material adverse change in the operation of the organization that will affect them directly.

4.91   In violation of Article 21A.11(e), Certus did not inform Plaintiff and the Class that it was unable to pay claims and, as a result thereof, that many healthcare providers would no longer accept Certus.

4.92   As a result of Defendants omissions and misrepresentations, Plaintiffs and the Class paid premiums to Certus.

4.93   However, because Certus did not timely pay for covered services, Plaintiff and the Class did not receive the health insurance benefits that they should have.

4.94   Many health care providers who Certus listed in its Directory of Medical Professionals stopped accepting Certus because of Certus' non-payment.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                   **PAGE 16 OF 26**

4.95    For example, on or about February 22, 1999, Plaintiff needed to purchase a "Pulmo-Aide" treatment for his son, who had health insurance with Certus.

4.96    Plaintiff went to eight pharmacies, several of which (including Drug Emporium and Autrey Pharmacy) were on Certus' list of approved providers; however, all eight of the pharmacies refused to accept his Certus insurance.

4.97    They told him that they would not accept it because Certus did not pay its bills.

4.98    The reason that Defendants continued to promote Certus and sign up new members after Certus was unable to timely pay claims was that they wanted to sell Certus to another company in order to recoup their investment, or at least minimize their losses.

4.99    Such actions constitute fraud and malice, as defined by Tex. Civ. Prac. & Rem. Code § 41.001(7).

# CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ON BEHALF OF ALL CLASS MEMBERS
### CIVIL RICO

5.1    Pursuant to 18 U.S.C. § 1964, Plaintiff and the Class bring an action against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

5.2    Defendants are collectively an "enterprise" as defined by 18 U.S.C. § 1961(4).

5.3    Defendants, as an enterprise, have engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961.

5.4    Defendants engaged in a pattern of mail fraud in violation of 18 U.S.C. § 1341 in sending promotional materials that contained fraudulent omissions, specifically, they failed to

disclose Certus' financial problems.

5.5   Defendants engaged in a pattern of mail fraud in violation of 18 U.S.C. § 1341 in sending promotional materials that contained fraudulent misrepresentations.

5.6   Defendants engaged in a pattern of mail fraud in violation of 18 U.S.C. § 1341 in sending false financial information to the Texas Department of Insurance.

5.7   The financial information that Defendants sent to the Texas Department of Insurance was false because it made estimates of medical expenses based on a medical loss ratio that Defendants knew to be understated.

5.8   Defendants engaged in mail fraud and/or wire fraud in falsely representing to the Texas Department of Insurance that Novopharm would provide adequate funding for Certus.

5.9   Defendants engaged in a pattern of wire fraud in violation of 18 U.S.C.  § 1343 in that Defendants used the telephone in signing up new members.

5.10  Defendants engaged in mail fraud in violation of 18 U.S.C. § 1341 in that Defendants sent a letter to Lamar and Phillips, Certus' reinsurer, stating that Novopharm would fully fund Certus' operation.

5.11  These RICO violations are the direct, proximate and producing cause of Plaintiff and the Class' damages.

**SECOND CAUSE OF ACTION**
**ON BEHALF OF THE NON-ERISA SUBCLASS ONLY**
**BREACH OF CONTRACT**

6.1   The policies and insurance plans that Certus issued to Plaintiff and the Non-ERISA Subclass constitute contracts.

6.2   As part of those contracts, Defendant Certus expressly and impliedly promised to timely pay

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    **PAGE 18 OF 26**

CutePDF - www.texla.com

covered claims.

6.3    Defendant Certus breached this contract, and as a result Plaintiff and the Class suffered

damages.

6.4    The measure of these damages is the expectation interest, that is, the difference in value

between the policy promised and the policy actually given.

6.5    Plaintiff and the Class are not seeking to be reimbursed for specific claims that should have

been paid; rather, they only seek the difference between the value of the policy promised and

the policy delivered.

## THIRD CAUSE OF ACTION
## ON BEHALF OF THE NON-ERISA SUBCLASS ONLY
## DTPA

7.1    Pursuant to Texas Business and Commerce Code Section 17.50, Plaintiff and the

Non-ERISA Subclass bring suit for violations of the Texas Deceptive Trade Practices Act.


7.2    The conduct of Defendants, as described in Section V above, violates the following

provisions of the DTPA:

- Section 17.46(a), which prohibits false, misleading or deceptive acts in trade or
  commerce;

- Section 17.46(b)(5), which prohibits representing that services have characteristics,
  uses or benefits that they do not have;

- Section 17.46(b)(7), which prohibits representing that services are of a particular
  quality or grade if they are of another;

- Section 17.46(b)(9), which prohibits advertising services with the intent not to sell
  them as advertised;

- Section 17.46(b)(23), which prohibits the failure to disclose information concerning

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 19 OF 26**

CutePDF - www.tevisa.com

services that was known at the time of the transaction where the failure to disclose was intended to induce Plaintiff and the Non-ERISA Subclass to enter into transactions into which they would not have entered had the information been disclosed.

7.3    As a direct, proximate, and producing result of Defendants' DTPA violations, Plaintiff and the Class were damaged in that they received an insurance policy that was worth less than what it should have been worth.

7.4    Reliance is not an element of a DTPA action. *Weizel v. Born*, 691 S.W.2d 598, 600 (Tex. 1985). Therefore, Plaintiff and the Class do not have to prove reliance.

7.5    Defendants DTPA violations were intentional and knowing; therefore, Plaintiffs also seek treble damages and attorney's fees.

## FOURTH CAUSE OF ACTION
## ON BEHALF OF THE NON-ERISA SUBCLASS ONLY
## INSURANCE CODE ARTICLE 21.21

8.1    Plaintiff and the Non-ERISA Subclass bring suit, pursuant to Texas Insurance Code Article 21.21, Section 16, against Defendant Certus for its violations of Article 21.21 of the Texas Insurance Code.

8.2    Specifically, Defendant Certus' conduct, as described in Section V of this petition, violated Texas Insurance Code Article 21.21, Sections 4(1), 4(2), 4(5) and 4(11).

8.3    Further, Certus acted knowingly when it violated these provisions of the Insurance Code. Therefore, Plaintiff and the Non-ERISA Subclass sue for their actual damages, court costs, attorneys' fees and treble damages, as provided by Article 21.21, Section 16.

8.4    Reliance is not an element of an action under Article 21.21. *First American Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 701 (Tex. App.–El Paso 1989, no writ). Therefore, Plaintiffs

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 20 OF 26**

do not have to prove reliance.

## FIFTH CAUSE OF ACTION
## ON BEHALF OF THE NON-ERISA SUBCLASS ONLY
## COMMON LAW FRAUD

9.1     In its marketing brochure, Certus omitted the fact that it was unable to timely pay claims

because of its lack of financial resources.  This omission made the statements made in the

brochure untrue.

9.2     In its marketing brochure, Certus omitted the fact that it had a negative net worth.  This

omission made the statements made in the brochure untrue.

9.3     In its marketing brochure, Certus omitted the fact that Novopharm was not fully funding

Certus.  This omission made the statements made in the brochure untrue.

9.4     Defendants did not disclose to Plaintiff or the Class that there was a material adverse change

in its ability to pay claims, despite the fact that Texas Insurance Code Article 21A.11(e)

imposed a duty to do so.

9.5     Defendants falsely asserted to the Texas Department of Insurance that Defendant Novopharm

Limited would make sufficient contributions to Defendant Certus so that Defendant Certus

would have a positive net worth and would be able to timely pay claims.

9.6     These false assertions and material omissions were made intentionally and/or knowingly.

9.7     Plaintiff and the Class relied on Defendants' false statements and upon the false impression

caused by Defendants' fraudulent omissions in purchasing health coverage from Certus.

9.8     As a result, Plaintiff and the Class suffered damages in that they received health coverage

that was not worth as much as the coverage they thought they were purchasing.

9.9     Under the circumstances of this case, reliance can be presumed.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    **PAGE 21 OF 26**

## SIXTH CAUSE OF ACTION
## ON BEHALF OF THE NON-ERISA SUBCLASS ONLY
## NEGLIGENT AND GROSSLY NEGLIGENT MISREPRESENTATION

10.1   In its marketing brochure, Certus omitted the fact that it was unable to timely pay claims because of its lack of financial resources.  This omission made the statements made in the brochure untrue.

10.2   In its marketing brochure, Certus omitted the fact that it had a negative net worth.  This omission made the statements made in the brochure untrue.

10.3   In its marketing brochure, Certus omitted the fact that Novopharm was not fully funding Certus.  This omission made the statements made in the brochure untrue.

10.4   Defendants did not disclose to Plaintiff or the Class that there was a material adverse change in its ability to pay claims, despite the fact that Texas Insurance Code Article 21A.11(e) imposed a duty to do so.

10.5   Defendants falsely asserted to the Texas Department of Insurance that Defendant Novopharm Limited would make sufficient contributions to Defendant Certus so that Defendant Certus would have a positive net worth and would be able to timely pay claims.

10.6   These false assertions and material omissions were made negligently and/or grossly negligently, and Defendants acted with malice in making them.

10.7   Plaintiff and the Class relied on Defendants' false statements and upon the false impression caused by Defendants' fraudulent omissions in purchasing health coverage from Certus.

10.8   As a result, Plaintiff and the Class suffered damages in that they received health coverage that was not worth as much as the coverage they thought they were purchasing.

10.9   Under the circumstances of this case, reliance can be presumed.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 22 OF 26**

## SEVENTH CAUSE OF ACTION
## ON BEHALF OF ALL CLASS MEMBERS
## THIRD-PARTY BENEFICIARY/BREACH OF CONTRACT

11.1    Defendants Novopharm Limited and Novopharm Holdings, Inc. entered into an agreement

with the Texas Department of Insurance to adequately fund Certus.

11.2    This agreement constituted a contract.

11.3    This agreement imposed an obligation upon Defendants Novopharm Limited and

Novopharm Holdings, Inc. to provide Certus with sufficient funding so that Certus would

have a positive net worth and so that Certus would be able to timely pay claims.

11.4    Plaintiff and the Class were intended third-party beneficiaries of the agreement.

11.5    The Texas Department of Insurance was acting on behalf of Certus' policyholders when it

required Defendants Novopharm Limited and Novopharm Holdings, Inc. to provide adequate

funding to Certus.

11.6    Defendants Novopharm Limited and Novopharm Holdings, Inc. breached this contract by

failing to adequately fund Certus.

11.7    As a result of this breach, Certus was not able to timely pay claims.

11.8    Due to Certus' unsound financial condition and inability to timely pay claims, Plaintiff and

the Class suffered damages.

11.9    The measure of these damages is the expectation interest, that is, the difference in value

between the policy promised and the policy actually given.

11.10   Plaintiff and the Class are not seeking to be reimbursed for specific claims that should have

been paid; rather, they only seek the difference between the value of the policy promised and

the policy delivered.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                              **PAGE 23 OF 26**

## VICARIOUS LIABILITY

12.1    Defendant Novopharm Limited is vicariously liable for the misfeasance and malfeasance of Defendant Certus because Defendant Certus is Defendant Novopharm Limited's ostensible agent.

12.2    Defendant Novopharm Holdings, Inc. is vicariously liable for the misfeasance and malfeasance of Defendant Certus as a member/shareholder of Certus because Certus is, and at all material times was, undercapitalized.

12.3    Defendant Novopharm Holdings, Inc. is vicariously liabile for the misfeasnace and malfeasance of Defendant Certus because, under the circumstances, Certus' corporate veil amounts to a sham to perpetrate a fraud.

12.4    Novopharm Holdings, Inc. is the alter ego of Novopharm Limited.

12.5    Defendant Novopharm Limited is vicariously liable for the misfeasance and malfeasance of Defendant Novopharm Holdings, Inc. because, under the circumstances, Novopharm Holdings, Inc.'s corporate veil amounts to a sham to perpetuate a fraud.

WHEREFRORE, PREMISES CONSIDERED, Plaintiff prays that citation be issued and that Defendants be served, that a Class be certified, and that, upon trial on the merits, that Plaintiff and the Class recover actual damages, exemplary and treble damages, attorneys' fees, costs of court, prejudgment interest and postjudgment interest.

Respectfully submitted,

MICHAEL R. COWEN, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

By: _____

Michael R. Cowen, P.C.
Federal I.D. No. 19967
Texas Bar No. 00795306


Conrad Bodden
Federal I.D. No. 21003
Texas Bar No. 00796220
LAW OFFICES OF JOHN VENTURA, P.C.
62 E. Price Road
Brownsville, Texas 78521
Tel. No. (956) 546-9398
Fax No. (956) 542-1478

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 25 OF 26**

CMxPDF - www.fxtxta.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the above and foregoing document has be forwarded via certified mail, return receipt requested to:

Jeffrey D. Roerig
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, Texas 78520

Norton A. Colvin, Jr.
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 E. Van Buren Street
Brownsville, Texas 78520

John R. Wallace
Wallace, Creech & Sarda, L.L.P.
UCB Plaza
3605 Glenwood Avenue, Suite 240
Raleigh, North Carolina 27612

on this 26th day of September 2001.

Michael R. Cowen

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                    **PAGE 26 OF 26**