

United States District Court
Southern District of Texas
FILED

SEP 2 6 2001


Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOEL FLORES, Individually and on | § | |
| Behalf of All Others Similarly Situated | § | |
| | § | CIV. ACTION NO. B-00-53 |
| V. | § | |
| | § | |
| CERTUS HEALTHCARE, L.L.C., | § | |
| NOVOPHARM LIMITED, | § | CLASS ACTION |
| and NOVOPHARM HOLDINGS, INC. | § | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

NOW COMES Joel Flores, Individually and on Behalf of All Others Similarly Situated,

Plaintiff in the above styled and numbered cause (collectively the "Class Plaintiffs") and, pursuant

to Federal Rule of Civil Procedure 23, moves this Court for an order certifying that this action shall

be maintained as a class action for the benefit of the Class consisting of:

**All policyholders, beneficiaries and members of any health insurance plan or
HMO from Certus Healthcare, L.L.C. from May 29, 1998 to November 2, 1999.**

Excluded from the Class are: (a) the Defendants herein, and the directors and officers thereof (b) the

subsidiaries, parents, and affiliates of Defendant, and the directors and officers thereof; (c) any

person or entity in which any excluded person has a controlling interest; (d) members of the

immediate family of any of the foregoing, if a natural person; (e) the legal representatives, heirs,

successors-in-interest, and assigns of any excluded person; (f) the judge presiding over this case; (g)

any person or entity related by any consanguinity or affinity within the third degree to the judge

presiding over this case.

Further, Plaintiff asks the Court to divide the Class into two subclasses, as follows:

(A)   **The ERISA Plan Subclass.** All Class members whose policy or plan with Certus

CHIPDF - www.finebio.com

Healthcare, L.L.C. constitutes an ERISA plan.

(B)     **The Non-ERISA Subclass.** All Class members whose policy or plan with Certus

Healthcare, L.L.C. does not constitute an ERISA plan.

## I.

## STATEMENT OF FACTS

Certus Healthcare, L.L.C. ("Certus") is an HMO. It sold policies to persons and businesses

residing in South Texas. Unfortunately, Certus had terrible financial problems, and was unable to

timely pay health insurance claims. As a result, many healthcare providers stopped accepting Certus

insurance. The issue in this case is whether Plaintiff and the Class–who were Certus

insureds–received insurance policies that were worth less than the policies that Certus contracted to

provide.

Certus knew that it had serious financial troubles before May 29, 1998 (the beginning of the

Class period). In fact, in April 1998, the Texas Department of Insurance noted that Certus' net worth

was "of concern." Nevertheless, Certus continued to agressively market its policies. It used a

uniform marketing brochure, which not only failed to disclose Certus' true financial condition, but

falsely stated that Certus was financially sound.

In reality, Certus' financial condition was so poor that it could not have continued to operate

without promises of support from Novopharm, its major shareholder. Novopharm contracted with

both the Texas Department of Insurance and Certus' reinsurer to fully fund Certus. If Novopharm

had done so, Certus would have had sufficient funds to timely pay claims, and the Class would not

have been damaged. However, Novopharm failed to do so.

Worse, Certus used false accounting to understate its losses to the Texas Department of

CWPDF - www.fasiie.com

Insurance.  Novopharm was aware of this purposeful underestimation, but continued to base its funding payments to Certus on figures it knew to be too low.  This accounting fraud had two effects.  First, it tricked the Texas Department of Insurance into allowing Certus to continue operating and into not requiring Novopharm to increase its funding commitment.  Second, it allowed Novopharm to contribute less money to Certus.  As a result, Certus did not have enough money to pay for the Class' medical treatment.

Novopharm eventually "sold" Certus.  The transaction closed on November 2, 1999, at which time another investor took over Certus' operations.  Certus' financial condition was so bad that Novopharm acutally had to *pay* the "purchaser" $5.4 million to take Certus off its hands.

Plaintiff filed this case as a putative class action, seeking to recover the difference in value between the policies that Certus promised and the policies that it actually delivered.  Plaintiff contends that an insurance plan in which approved medical providers might not actually provide treatment because of a lack of timely payment is worth less than a plan where the approved medical providers are timely paid and accept plan insureds.  As Plaintiff shows in this motion, this case is suitable for class action treatment because all of the causes of action arise out of a common set of facts, and the case can be tried on a classwide basis–with no need of evidence from individual class members regarding reliance or damages.

## II.

## THE COURT SHOULD CERTIFY A CLASS UNDER FRCP 23(b)(3)

### A.  Class Certification Is An Efficient Use of Judicial Resources

When a defendant has harmed a large number of individuals, a class action is clearly a superior method of adjudicating the claim.  The purpose of class actions is to conserve the resources

of both courts and parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion. *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471 (5th Cir. 1986). Before a court may certify a class, the movant must meet all requirements of Rule 23(a) and satisfy one of the subsections of Rule 23(b). FED. R. CIV. P. 23; *Eisen v. Carlisle and Jackson*, 417 U.S. 156, 163 (1974).

Although class proponents must meet all requirements imposed by the Rules, this Court must not determine the validity of the underlying lawsuit. *See Bertulli v. Independent Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 n.29 (5th Cir. 2001). At the certification stage, class proponents are not required to prove a *prima facie* case. *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 570 (S.D. Tex. 2000). Thus, the Court should look only to the facts which go to the prerequisites of class certification and should not consider those which go to the merits of the claim. *Rubenstein v. Collins*, 162 F.R.D. 534, 536 (S.D. Tex. 1995). Because the merits are not at issue, the Court should accept Plaintiffs' substantive allegations as true. *See generally id.*

The district court, while not reviewing issues on the merits, may look beyond the pleadings in deciding whether a party has met Rule 23 prerequisites. To do so the court must understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful determination of the certification issues. *Henry*, 199 F.R.D. at 570-71. In determining whether a party meets the requirements for class certification, a court should err in favor of maintenance of a class action. *Rubenstein*, 162 F.R.D. at 536.

## B.   The Requirements of Rule 23(a) Are Satisfied

The general criteria for certification of a class are set forth in Fed. R. Civ. P. 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each requirement of Rule 23(a) is met in this case.

### 1.   *The Proposed Class is So Numerous that Joinder of all Members Would be Impracticable*

Rule 23(a)(1) requires the proposed class be only so numerous that "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Impracticable does not mean impossible.  1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.04 (3d Ed. 1992).  The requirement imposes no absolute rules, and instead turns on the practicability of joining all class members individually.  *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 557 (N.D. Tex. 1993).  Thus, the district court's proper focus is not on numbers alone.  *Zeidman v. McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Other relevant factors include the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.  *Id.*  Plaintiffs are permitted to reasonably approximate the size of the class to satisfy their burden.  *Henry,* 199 F.R.D. at 569.  As one noted commentator suggests, "in light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impractical, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."  1 NEWBERG & CONTE, *supra,* § 3.05.

The proposed Class consists of tens of thousands of persons.  There are far more than the 40 needed to give rise to the presumption that joinder would be impractable.  *Cf.* 1 NEWBERG & CONTE, *supra,* § 3.05.  In fact, courts in this Circuit have held that classes much smaller than the Class at bar

satisfy this requirement. *See, e.g., Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (class of 317 members sufficient); *Republic Nat'l Bank v. Denton & Anderson Co.*, 68 F.R.D. 208, 213 (N.D. Tex. 1975) (40 class members who reside in eleven states sufficient).

## 2. *There Are Common Questions of Law or Fact*

Courts do not apply a demanding test on the question of commonality. *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999). Moreover, a plaintiff meets the test where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members. *Id.* The interests and claims of the various plaintiffs need not be identical. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Instead, "a court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class." *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). A high degree of commonality results when a class complaint relates to a single type of action, practice, or form of contract. *Durrett,* 150 F.R.D. at 558. Even the potential necessity of somewhat complex individual award calculations is insufficient to defeat certification. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

The are numerous common questions of law and fact in this case. They include the following:

(i)     Whether Certus had a pattern or practice of not timely paying claims;

(ii)    Whether Certus had a pattern or practice representing that it is financially sound and capable of paying claims when in fact it is not;

(iii)   Whether Certus' pattern and practice of failing to disclose its financial condition constituted mail fraud;

(iv)    Whether Certus violated the RICO act in its pattern of fraudulent omissions, misrepresentations and mail fraud;

(v)     Whether Certus committed common law fraud in its pattern of fraudulent omissions and misrepresentations;

(vi)    Whether Certus' misfeasance constituted negligent misrepresentation;

(vii)   Whether Certus' violated the Texas DTPA in its pattern of omissions, misrepresentations, and failure to timely pay claims;

(viii)  Whether Certus violated Section 21.21 of the Texas Insurance Code in its pattern of omissions, misrepresentations, and failure to timely pay claims;

(ix)    Whether Certus breached its contract with the Class in its failure to timely pay claims.

(x)     Whether Certus was undercapitalized, which would impose personal liability upon its members.

(xi)    Whether Certus was the ostensible agent of Defendants Novopharm Limited and Novopharm Holdings, Inc.

(xii)   Whether Defendant Novopharm Limited failed to adequately fund Certus;

(xiii)  What the measure of the Class' damages—the difference between the value of the policy promised and the policy received—is;

(xiv)   Whether Defendants acted with malice and are thus liable for punitive damages;

(xv)    Whether Certus underreported or understated its medical loss ratio;

(xvi)   Whether Novopharm knew that Certus was underreporting or understating its medical loss ratio;

(xvii)  Whether Certus committed fraud by underreporting or understating its medical loss ratio;

(xviii) Whether Plaintiff and the Class are intended third-party beneficiaries of the Second Amended Operating Agreement;

(xix)   Whether Novopharm Limited broke its agreement with the Texas Department of Insurance by failing to adequately fund Certus;

(xx)    Whether Plaintiff and the Class are intended third-party beneficiaries of the agreement between Novopharm Limited and the Texas Department of Insurance;

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**                    **PAGE 7 OF 21**

(xxi)  Whether Novopharm Limited committed fraud by using medical loss ratios it knew to be understated in order to provide less funding to Certus that was required by its agreement with the Texas Department of Insurance;

(xxii)  Whether the insurance policies that Plaintiff and the Class received were worth less than the policies that Certus represented they would receive;

(xxiii)  Whether Certus violated the Texas Insurance Code by submitting reports to the Texas Department of Insurance that were misleading because of Certus' using underaccrued medical loss ratios in determining its liabilities; and

(xxiv)  Whether Novopharm Holdings, Inc. is the alter ego of Novopharm Limited.

### 3.  *Plaintiff's Claims are Typical of the Claims of the Class*

Like commonality, the test for typicality is not demanding. *James*, 254 F.3d at 570. The test focuses on the similarity between the named plaintiff's legal and remedial theories and the theories of those whom they purport to represent. *Id.* "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.24[4] (3d Ed. 2000).   Under Rule 23(a)(3), typicality exists when the plaintiff's claims arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Longden*, 123 F.R.D. at 556; *Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993).

It is the nature of the claims that determines whether the class representatives' claims are typical. It is "not the specific facts from which the claims arose or relief sought." *First RepublicBank, Fed. Sec. L. Rep.* at 93,546. Thus, the requirement is satisfied even if factual differences exist between the claims of class representatives and the class members. *Id.* Nor must the class representatives' claims and the claims of other class members all be "identical." *Phillips*

*v. Joint Legislative Comm. on Performance & Expenditure Rev.*, 637 F.2d 1014, 1024 (5th Cir. 1981); *Ligon v. Frito-Lay, Inc.*, 82 F.R.D. 42, 47 (N.D. Tex. 1979).

Defendants challenging typicality frequently attempt to isolate and emphasize factual differences between the claims of the named class representatives and those of other class members. However, factual differences will not defeat typicality. 5 MOORE, *supra*, § 23.24[4]. Thus, typicality exists when the plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. *Durrett*, 150 F.R.D. at 558. Differences in damages between class representatives and unnamed class members do not necessarily defeat certification. *See Bertulli*, 242 F.3d at 297.

The typicality requirement is satisfied here. Plaintiff stands in the same position as the other Class members. He paid premiums to become a member of Certus, and he did not receive a policy that was as valuable as the policy promised by Certus. Accordingly, the proof that plaintiff will offer and the legal theories advanced are basic to the claims of all Class members. Plaintiffs' claims are typical of those of the Class.

### 4. *Plaintiff Will Fairly and Adequately Protect the Interests of the Class*

The fourth and final prerequisite of Rule 23(a) requires that "the representative parties . . . fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Class representatives are merely asked to have a general understanding of their position as plaintiff with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants. *Rubenstein*, 162 F.R.D. at 538. Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests. *Mullen*, 186 F.3d at 625-26. Variances

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**                    **PAGE 9 OF 21**

in the method of proving causation and damages between representatives and unnamed class members are insufficient to defeat certification. *Id.* at 626. In addition, courts find it important whether class members will have the opportunity to opt out of the class. *E.g., Jenkins*, 782 F.2d at 472 n.5.

The determination of adequacy of representation under Rule 23(a)(4) requires that the plaintiff not have interests antagonistic to those of the class; and that his attorneys be qualified, experienced, and able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973); *Longden*, 123 F.R.D. at 557; *Gibb*, 104 F.R.D. at 75. Both prongs of the adequacy test are met here.

First, there is no conflict between plaintiff and the other members of the Class. As the Fifth Circuit has explained,

> so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (citations omitted).

As demonstrated above, Plaintiff's interests are not antagonistic to or in conflict with the interests of the Class members, since his claims are typical of the claims of all members of the proposed Class. In the prosecution of his claims, Plaintiff possesses the incentive to fairly represent all Class members' claims. *See, e.g., First RepublicBank*, Fed. Sec. L. Rep. at 93,548 (deciding adequacy issue and finding class representative's interests co-extensive with interests of the class).

The second part of the adequacy test is also satisfied. Courts look primarily to the skill and experience of plaintiffs' counsel in assessing this requirement. *Longden*, 123 F.R.D. at 558; *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Plaintiffs' counsel will provide

fair and adequate representation for the Class. Plaintiffs do not believe that defendants will dispute

that this factor is satisfied. If appropriate, however, descriptions of the background and experience

of each of plaintiffs' counsel will be submitted for the Court's review.

**C.**     <u>**Plaintiff Further Satisfies Requirements of Rule 23(b)**</u>

As already mentioned, in addition to Rule 23(a), courts require plaintiffs to satisfy one of the

requirements of Rule 23(b). Plaintiffs are seeking class certification under Rule 23(b)(3), which

provides:

> (b)     An action may be maintained as a class action if the prerequisites of
> subdivision (a) are satisfied, and in addition:
>
>                 * * *
>
> (3)     the court finds that the questions of law common to the members of
> the class predominate over any questions affecting only individual
> members and that a class action is superior to other available methods
> for the fair and efficient adjudication of the controversy.

Rule 23(b)(3) requires only that a class action achieve an economy of time, effort and expense

without sacrificing procedural fairness. 5 MOORE, *supra*, § 23.45[1]. Plaintiff meets each

requirement of the Rule.

**1.**     <u>***Common Questions of Law or Fact Predominate***</u>

In order to "predominate," common issues must constitute a significant part of the individual

cases. *Jenkins*, 782 F.2d at 472. If common questions predominate over individual questions as to

liability, courts generally find the predominance standard of Rule 23(b) to be satisfied even if

individual damages issues remain. 5 MOORE, *supra*, § 23.46[3][a]; *see Bertulli*, 242 F.3d at 298

(affirming certification despite necessity of individualized damages calculations). The Court's

inquiry into the predominance factor should include a qualitative, rather than quantitative, analysis.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**               **PAGE 11 OF 21**

*Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 356 (S.D. Ga. 1996) (quoting 1 NEWBERG & CONTE, *supra*, § 4.25). Thus, courts do not determine predominance by the relative number of common to individual issues. *See id.*; 5 MOORE, *supra*, § 23.46[1].

There are numerous common issues in this case. They include the following:

(i)     Whether Certus had a pattern or practice of not timely paying claims;

(ii)    Whether Certus had a pattern or practice representing that it is financially sound and capable of paying claims when in fact it is not;

(iii)   Whether Certus' pattern and practice of failing to disclose its financial condition constituted mail fraud;

(iv)    Whether Certus violated the RICO act in its pattern of fraudulent omissions, misrepresentations and mail fraud;

(v)     Whether Certus committed common law fraud in its pattern of fraudulent omissions and misrepresentations;

(vi)    Whether Certus' misfeasance constituted negligent misrepresentation;

(vii)   Whether Certus' violated the Texas DTPA in its pattern of omissions, misrepresentations, and failure to timely pay claims;

(viii)  Whether Certus violated Section 21.21 of the Texas Insurance Code in its pattern of omissions, misrepresentations, and failure to timely pay claims;

(ix)    Whether Certus breached its contract with the Class in its failure to timely pay claims.

(x)     Whether Certus was undercapitalized, which would impose personal liability upon its members.

(xi)    Whether Certus was the ostensible agent of Defendants Novopharm Limited and Novopharm Holdings, Inc.

(xiii)  Whether Defendant Novopharm Limited failed to adequately fund Certus;

(xii)   What the measure of the Class' damages—the difference between the value of the policy promised and the policy received—is;

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**                    **PAGE 12 OF 21**

(xiv)   Whether Defendants acted with malice and are thus liable for punitive damages;

(xv)    Whether Certus underreported or understated its medical loss ratio;

(xvi)   Whether Novopharm knew that Certus was underreporting or understating its medical loss ratio;

(xvii)  Whether Certus committed fraud by underreporting or understating its medical loss ratio;

(xviii) Whether Plaintiff and the Class are intended third-party beneficiaries of the Second Amended Operating Agreement;

(xix)   Whether Novopharm Limited broke its agreement with the Texas Department of Insurance by failing to adequately fund Certus;

(xx)    Whether Plaintiff and the Class are intended third-party beneficiaries of the agreement between Novopharm Limited and the Texas Department of Insurance;

(xxi)   Whether Novopharm Limited committed fraud by using medical loss ratios it knew to be understated in order to provide less funding to Certus that was required by its agreement with the Texas Department of Insurance;

(xxii)  Whether the insurance policies that Plaintiff and the Class received were worth less than the policies that Certus represented they would receive;

(xxiii) Whether Certus violated the Texas Insurance Code by submitting reports to the Texas Department of Insurance that were misleading because of Certus' using underaccrued medical loss ratios in determining its liabilities; and

(xxiv)  Whether Novopharm Holdings, Inc. is the alter ego of Novopharm Limited.

Plaintiff expects that Defendant will attempt to defeat class certification by arguing that the claims pled by Plaintiff involve issues of individual reliance, which in some cases preclude certification. However, there are few reliance issues present in this case, and none of them predominate to the extent necessary to defeat certification.

First, reliance is not an element of several of plaintiff's causes of action, including breach of contract, third-party beneficiary/breach of contract, DTPA and Article 21.21 of the Texas Insurance

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**                    **PAGE 13 OF 21**

Code. *See Weitzel v. Barn*, 691 S.W.2d 598, 600 (Tex. 1985) (holding that reliance is not an element

of a DTPA claim); *First American Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 701 (Tex. App.–El

Paso 1989, writ denied) (holding that reliance is not an element of a 21.21 claim). As a result, courts

have certified such claims, overruling Defendants arguments that issues of individual reliance

defeated certification. *E.g. Henry Schein, Inc. v. Stormboe*, 28 S.W.3d 196, 206 (Tex. App.–Austin

2000).

Second, reliance is not always necessary to establish a civil RICO claim. In RICO

jurisprudence, reliance is really part of the issue of proximate cause. A RICO plaintiff must prove

that the defendant's pattern of mail fraud or wire fraud proximately caused him damages. Under

most circumstances, this requires proof that he relied on the fraudulent statements. However, the

Fifth Circuit has held that reliance is not required in situations where the fraudulent conduct

otherwise proximately caused the plaintiff's damages. *Proctor & Gamble Co. v. Amway Corp.*, 242

F.3d 539, 564-65 (5th Cir. 2001). In the instant case, Plaintiff has pled that Defendants committed

mail fraud by making false statements to the Texas Department of Insurance and Certus' reinsurer,

and that the Department relied on these statements in allowing Certus to continue to operate. This

fraudulent conduct was the proximate cause of Plaintiff and the Class' damages, even though they

likely had no idea that the statements were ever made. But for the false statements made to the

Department, Defendants could not have continued to collect premiums. Therefore, with respect to

the claims regarding false statements made to the Texas Department of Insurance and Certus'

reinsurer, Plaintiff and the Class do not need to show individual reliance in proving their RICO

claim. *Proctor & Gamble*, 242 F.3d at 564-65.

Third, reliance is presumed with respect to Plaintiff's claims for fraudulent omissions. *In*

*re Great Southern Life Ins. Sales Practices Litig.*, 192 F.R.D. 192, 219-20 (N.D. Tex. 2000). Plaintiff has pled two types of fraudulent omissions: (1) Certus failed to disclose a material adverse change in its financial condition, despite the duty imposed by Texas Insurance Code Article 21A.11(e) to do so; and (2) Certus failed to disclose its precarious financial condition and inability to timely pay claims, which made the marketing documents misleading. Positive proof of reliance is unnecessary for claims involving these omissions. *Id.*

Finally, with respect to Plaintiff's allegations of affirmative misrepresentations, the circumstances in this case give rise to a presumption of reliance. This case does not involve a number of different misrepresentations made in a variety of ways. The only false statements made to the Class upon which Plaintiff and the Class is suing were made in marketing materials that were uniformly distributed. These statements suggested that Certus was financially sound when in fact it was not. Given that no rational consumer would purchase health insurance from an HMO that did not have enough money to pay claims, the Court can presume reliance. As the Court in *Great Southern Life* held, "Where representations have been made in regard to a material matter and action has been taken, in the absense of evidence showing to the contrary it will be presumed that the representations were relied upon." *Great Southern Life*, 192 F.R.D. at 220 (quoting 12 WILLISTON ON CONTRACTS 480 (3d ed 1970)); *see also Vasquez v. Superior Court of San Joaquin County*, 484 P.2d 964, 972-73 (Cal. 1971).

    **2.**    ***A Class Action is Superior to Other Available Methods<br>for the Fair and Efficient Adjudication of this Action***

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Henry*, 199 F.R.D. at 573 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**        **PAGE 15 OF 21**

591, 617 (1997)).  In determining the best available method for resolving a dispute, the Court may consider the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually.  *Henry*, 199 F.R.D. at 573.  To successfully challenge superiority, the party opposing certification must not only show that individual actions are feasible, they must also show that individual class members have an interest sufficient to make individual actions desirable.  *Bertulli*, 242 F.3d at 299.

The class action is not only superior to other procedures for adjudicating the claims presented by this action, it is the only practical method for obtaining the fair and efficient disposition of these claims.  The alternative to this class action would be a multitude of individual, virtually identical actions.  This is precisely "the evil that Rule 23 was designed to prevent."  *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).  The costs of individual actions far outweighs those of a class action.

### 3. *There Will be No Substantial Problems In Managing this Case as a Class Action*

The last statutory factor that courts consider in determining predominance and superiority is the anticipated difficulty of managing the class action.  5 MOORE, *supra*, § 23.49[5][a].  Courts disfavor dismissal of a class action for management reasons, and dismissal for such reasons should be the exception rather than the rule.  *In re South Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980).  A court should not decline to certify a class because it fears that insurmountable problems may later appear.  *Collins v. International Dairy Queen*, 186 F.R.D. 189, 190 (M.D. Ga. 1999).  Plaintiffs do not anticipate any unusual difficulties in presenting proof at trial on behalf of the Class, since most triable issues concern defendants' conduct.  If the Class obtains a judgment or settlement, claims administration has similarly been developed to a high level of organization and efficiency.

This case can be tried as a class action. The liability evidence will be the same for all Class members. Plaintiff will offer proof that:

1.   Defendants failed to disclose Certus' true financial condition to Plaintiffs;

2.   Certus did not have the financial resources necessary to timely pay claims;

3.   Certus used misleading medical loss ratios in documents submitted to the Texas Department of Insurance, which was regulating Certus on behalf of the Class;

4.   Novopham Limited agreed to adequately fund Certus, and knowingly did not do so;

5.   Novopham Limited knew that Certus was understating its medical loss ratio, but nevertheless used that ratio to determine the amount of funding to provide to Certus; resulting in Certus being underfunded;

6.   The marketing documents contained fraudulent omissions and misreprentations; and

7.   The "corporate veils" of Certus and Novopham Holdings, Inc. should be "pierced."

The only significant liability issue where there will be some differences amongst Class members arises from ERISA preemption. Some Class members' HMO memberships constitute ERISA plans, and therefore their state law causes of action are preempted. Other Class members are not part of ERISA plans, and they can bring state law causes of action. However, the ERISA issue is easily handled through the use of subclasses. Plaintiff has asked the Court to divide the Class into two subclasses–those whose policies constitute ERISA plans (the "ERISA Plan Subclass"), and those that do not (the "Non-ERISA Subclass"). The case could be tried on a class-wide basis, and the jury would not have to answer separate liability questions for each subclass. Rather, the jury can be charged on each theory of liability. The ERISA Plan Subclass will only prevail if the jury finds for the Class on the RICO claims. The Non-ERISA Subclass will be able to prevail if the jury finds for them on any legal theory.

Damages can also be tried on a classwide basis. In evaluating how the damage element of

the case is to be tried, it is important to understand the Class' damages theory. Plaintiff and the Class are suing to recover the difference in value between a policy issued by a solvent HMO that timely paid claims and the policies actually issued by Certus. Plaintiff anticipates putting forth testimony that a policy from Certus was actually worth only a certain percentage of a policy from a solvent HMO that timely paid claims. Therefore, the jury will be able to determine–using only two damage questions–the Class' actual damages. For each Subclass, the jury charge will ask, "What is the difference in value, if any, between the policy that the Subclass was promised and the policy actually received." If, for example, the jury finds that the policies were only worth 75% of the policies promised, the jury would award 25% of the premiums paid by the Class as damages.

It would also be straightforward to disburse the damages to the Class after a recovery. Each Class member would receive a pro rata share of the recovery, based on the proportion of the premiums paid by or on behalf of that Class member to the sum of the premiums paid for period in dispute. Therefore, this case can be tried as a class action, and is manageable as a class action.

## III.

## CONCLUSION

Plaintiff respectfully requests the Court to order that this action may be maintained as a class action and certify Plaintiff as the representative of the Class as defined herein.

Respectfully submitted,

MICHAEL R. COWEN, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

By: _____

Michael R. Cowen, P.C.
Federal I.D. No. 19967
Texas Bar No. 00795306


Conrad Bodden
Federal I.D. No. 21003
Texas Bar No. 00796220
LAW OFFICES OF JOHN VENTURA, P.C.
62 E. Price Road
Brownsville, Texas 78521
Telephone (956) 546-9398
Facsimile (956) 542-1478

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the above and foregoing document has been forwarded via certified mail, return receipt requested to:

Jeffrey D. Roerig
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, Texas 78520

Norton A. Colvin, Jr.
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 E. Van Buren Street
Brownsville, Texas 78520

John R. Wallace
Wallace, Creech & Sarda, L.L.P.
UCB Plaza
3605 Glenwood Avenue, Suite 240
Raleigh, North Carolina 27612

on this 26th day of September 2001.

Michael R. Cowen

## <u>CERTIFICATE OF CONFERENCE</u>

I, Michael R. Cowen, hereby certify that at the last status conference opposing counsel stated

that they are opposed to this motion.

Michael R. Cowen

CShPDF - www.fastio.com