69

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOEL FLORES, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. B-00-053 |
| CERTUS HEALTHCARE, L.L.C., NOVOPHARM LIMITED, and NOVOPHARM HOLDINGS, INC. | ) ) ) ) | |
| Defendants. | ) ) | Class Action |

## DEFENDANTS NOVOPHARM HOLDINGS, INC. AND NOVOPHARM LIMITED'S MEMORANDUM OF ADDITIONAL AUTHORITY ON CLASS CERTIFICATION

TO THE UNITED STATES MAGISTRATE JUDGE:

COME NOW NOVOPHARM HOLDINGS, INC. and NOVOPHARM LIMITED, Defendants in the above entitled and numbered cause, and file this, their Memorandum of Additional Authority regarding Class Certification, and would show the Court as follows:

At the hearing on Plaintiffs' Motion for Class Certification, held February 13, 2002, counsel for the Defendant Certus argued that Class Certification should be denied because the issue of whether the named Plaintiffs or the unidentified members of the putative class had standing to bring the claims before the Court would have to be decided individually for each and every putative class member. Thus, the Plaintiffs could not meet the Rule 23(b)(3) standard requiring a showing that class issues predominate over individual issues. Counsel for the Novopharm Defendants adopted the arguments proffered by Certus' counsel.

On Friday, February 15, 2002, the United States Court of Appeals for the Fifth Circuit decided the case <u>Rivera v. Wyeth-Ayerst Laboratories</u>, No. 01-40122, 2002 U.S. App. LEXIS

2411 (February 15, 2002), a copy of which is attached hereto. In Rivera, the Fifth Circuit held, *sua sponte*, that the Rivera plaintiffs lacked standing to assert their claims because they had failed to show injury in fact and causation, two of the key elements of standing. See Rivera at *10-*15. In Rivera, the class was defined to include as potential class members those who suffered only a claimed loss in the value of the product purchased. Applying the Rivera test, it is probable that many putative class members here would lack standing. Thus, in the instant case, it will be necessary to determine on an individual basis whether each class member has standing to assert his or her claims. Rivera is further support for Defendants' contention that individual issues predominate and that this case is unsuited to class treatment.

In light of the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
        Norton A. Colvin, Jr. w/ permission
        Attorney-in-Charge
        State Bar No. 04632100
        Federal Admissions No. 1941
        1201 East Van Buren
        Post Office Box 2155
        Brownsville, Texas 78522
        (956) 542-7441
        Fax (956) 541-2170

OF COUNSEL:
John R. Wallace
Paul P. Creech
Wallace, Creech & Sarda, L.L.P.
Post Office Box 12085
Raleigh, North Carolina 27605
(919) 782-9322
(919) 782-8113 – Fax

ATTORNEYS FOR DEFENDANTS,
NOVOPHARM LIMITED AND NOVOPHARM
HOLDINGS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Novopharm Limited and Novopharm Holdings, Inc.'s Memorandum of Additional Authority on Class Certification was served upon all counsel of record, to-wit:

>Michael R. Cowen
>765 East 7th Street, Suite A
>Brownsville, Texas 78520
>Attorneys for Plaintiff
>
>John Ventura
>Conrad A. Bodden
>Law Offices of John Ventura, P.C
>62 East Price Road
>Brownsville, Texas 78521
>Attorneys for Plaintiff
>
>Jeffrey D. Roerig
>Roerig, Oliveira & Fisher, L.L.P.
>855 West Price Road, Suite 9
>Brownsville, Texas 78520
>    Attorneys for Defendants Certus Healthcare, L.L.C., David Rodriguez, and Dr. Ashok K. Gumbhir

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant to the Federal Rules of Civil Procedure, on this the 19th day of February, 2002.

_____
Norton A. Colvin, Jr.

LEXSEE 2002 U.S. App. Lexis 2411

**ELIZABETH RIVERA; ARKANSAS CARPENTERS HEALTH AND WELFARE FUND, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, Plaintiffs-Appellees, versus WYETH-AYERST LABORATORIES, A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION; AMERICAN HOME PRODUCTS CORPORATION, Defendants-Appellants.**

No. 01-40122

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*2002 U.S. App. LEXIS 2411*

February 15, 2002, Decided

**PRIOR HISTORY:**
[*1] Appeal from the United States District Court for the Southern District of Texas.

*Rivera v. Wyeth-Ayerst Lab., 197 F.R.D. 584, 2000 U.S. Dist. LEXIS 17630 (S.D. Tex. 2000)*

**DISPOSITION:**
Reversed and dismissed.

**JUDGES:**
Before SMITH and EMILIO M. GARZA, Circuit Judges, and CUMMINGS, * District Judge.

* District Judge of the Northern District of Texas, sitting by designation.

**OPINIONBY:**
JERRY E. SMITH

**OPINION:**

JERRY E. SMITH, Circuit Judge:

Pursuant to FED. R. CIV. P. 23(f), defendants Wyeth-Ayerst Laboratories ("Wyeth") and American Home Products Corporation appeal the certification of a nationwide class of drug purchasers and their insurance companies. Because we conclude that this suit does not present a justiciable case or controversy under Article III of the Constitution, we reverse and render a judgment of dismissal.

I.

In July 1997, Wyeth began distributing Duract, a non-steroidal anti-inflammatory drug ("NSAID") prescribed for short-term management of acute pain. Although all NSAID's carry certain risks of liver and gastrointestinal damage, clinical trials revealed that Duract had additional negative effects. Wyeth included a package insert in each box of Duract detailing these dangers, reporting the results of the clinical trials, recommending Duract be used for only short periods ("generally [*2] less than ten days"), and warning that Duract may not be appropriate for those with preexisting liver conditions. The Food and Drug Administration ("FDA") approved Duract, its labeling, and its package insert.

In December 1997, Wyeth received three reports of liver failure by patients who had taken Duract for long-term relief without undergoing liver testing. In February 1998, after receiving FDA approval, Wyeth issued a new, revised package insert reporting these cases of liver failure and reemphasizing that Duract was intended "only for the short term (10 days or less)." After receiving new reports of liver failure among long term users, Wyeth voluntarily withdrew Duract from the market in June 1998.

Wyeth explained that of the twelve patients injured by Duract, eleven had taken the drug for over ten days, and one had preexisting liver disease. Wyeth stated that because no change in Duract's package insert could guarantee physicians would stop prescribing the drug for long-term use, it was withdrawing Duract from the market. Wyeth established a program to refund Duract users for any unused portion of their prescription.

## II.

Elizabeth Rivera and the Arkansas Carpenters Health [*3] and Welfare Fund (the "Fund") filed this nationwide class action suit. Rivera seeks to represent all patients who were prescribed, had purchased, and had ingested Duract but suffered *no* physical or emotional n1 injury. In fact, the class explicitly excludes any patients who have been injured by Duract. Nor do plaintiffs claim Duract was ineffective as a pain killer or has any future health consequences.

---

n1 The plaintiffs have never alleged -- in their original complaint, their second amended complaint, or their brief to this court -- that they suffered emotional distress. Yet, in its November 8 order denying Wyeth's motion to dismiss, the district court based its holding on this fact. It concluded that "even if the medicine does not cause physical injury, the user may spend months or years worrying about potential illness caused by the medicine," and this stated a claim under Texas law. *Rivera v. Wyeth-Ayerst Labs.*, 121 F. Supp. 2d 614, 619 (S.D. Tex. 2000). To eliminate all confusion, the plaintiffs repudiated the district court's claim in their brief to this court.

---

[*4]

Although the class includes citizens of all fifty states and the District of Columbia, plaintiffs state their complaint under Texas law. They allege that Wyeth failed to warn of Duract's dangers and that Duract was defective in violation of (1) the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE §§ 17.50, 17.46 (Vernon Supp. 1998), (2) the implied warranty of merchantability, TEX. BUS. & COM. CODE § 2.314(a) (Vernon 1994), and (3) common law unjust enrichment, and thus Wyeth owes them economic damages. The Fund asserts a derivative claim: It seeks to represent all third-party payers who have reimbursed these patients for Duract.

Wyeth asked the district court to deny the motion to certify the class on the pleadings or, in the alternative, to allow class discovery and an evidentiary hearing. The plaintiffs agreed that discovery would be appropriate; accordingly, on November 28, 2000, the parties submitted a proposed discovery plan to the district court. That same day, despite the plaintiffs' concession in favor of discovery, the court denied Wyeth's request for discovery and an evidentiary hearing and certified the class under FED. R. CIV. P. 23(b). n2

---

n2 *Rivera v. Wyeth-Ayerst Labs.*, 197 F.R.D. 584 (S.D. Tex. 2000).

---

[*5]

Even though FED. R. CIV. P. 26(d) prohibits discovery and evidentiary hearings in advance of the pretrial conference, and the pretrial conference had been held only thirteen days earlier, the district court rebuked Wyeth for not having pursued discovery over the past four months and decided it could certify the class without any discovery. Accordingly, although the record contained no evidence on Rivera's purchase or use of Duract or on the Fund's reimbursement of Duract patients, the court held that the claims of Rivera and the Fund "appear to be typical" of the class members.

Similarly, the district court dismissed Wyeth's argument that variations in the fifty states' laws would swamp any common issues. There was no need to analyze different states' laws or even to decide which laws applied, the district court held, because plaintiffs had promised eventually to provide a workable subclass plan that would solve any problems.

Wyeth timely filed, and this court granted, an application for interlocutory appeal pursuant to rule 23(f). Apparently estimating that their odds on appeal were bleak, plaintiffs moved the district court to issue an order "expressing the court's intent to [*6] vacate the class certification order and to reconsider the class certification issue upon remand." The plaintiffs noted that the district court had erred in failing to conduct a choice-of-law analysis and failing to demand plaintiffs submit a subclass plan before certification; plaintiffs requested that the court to assure that it would do so on remand; nonetheless, the court denied the motion on the stated ground of lack of jurisdiction.

## III.

Rarely on appeal does the appellee concede that the district court's order is so fatally flawed that it cannot stand. Yet, at oral argument, the attorney for Rivera and the Fund did just that, admitting that only a "feeling of obligation to support the district court order" moved him to argue when it was "crystal clear" we would have to vacate and remand. n3 Counsel was only half right, however: Because this suit does not even present a justiciable case or controversy under Article III, we vacate and render a judgment of dismissal.

---

n3 We are sympathetic to counsel's plight on appeal, and we appreciate his candor, in his role as an officer of the court, in acknowledging the

weakness of the position thrust on him and his clients by the district court.

[*7]

IV.

Article III limits the judicial power of the federal courts to "Cases" and "Controversies" but does not define those terms. Instead, "the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). An "essential and unchanging part" of this common understanding is the doctrine of standing. 504 U.S. at 560.

The "irreducible constitutional minimum of standing contains three elements": "The plaintiff must have suffered an injury in fact," "there must be a causal connection between the injury and the conduct complained of," and "it must be likely ... that the injury will be redressed by a favorable decision." 504 U.S. at 560-61 (internal quotations omitted).n4 The plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998). Failure to establish any one deprives [*8] the federal courts of jurisdiction to hear the suit. *Id.*

n4 *Accord Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001).

The district court erred by not demanding such a showing before it certified the class. n5 Had it done so, it would have found that plaintiffs had demonstrated neither injury nor causation.

n5 Although Wyeth argued that plaintiffs lacked standing, the district court refused to address the question, insisting it had done so in its November 8 denial of a motion to dismiss. *Rivera v. Wyeth-Ayerst Labs.*, 197 F.R.D. 584, 588 (S.D. Tex. 2000). The November 8 order, however, does not mention standing. *Rivera v. Wyeth-Ayerst Labs.*, 121 F. Supp. 2d 614 (S.D. Tex. 2000).

A.

Even though the certification inquiry is more straightforward, we must decide standing first, [*9] because it determines the court's fundamental power even to hear the suit. 523 U.S. at 94. The procedural posture of this case does not alter our conclusion.

Though rule 23(f) allows a party to appeal only the issue of class certification, "standing is an inherent prerequisite to the class certification inquiry." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001). Accordingly, standing may -- indeed must -- be addressed even under the limits of a rule 23(f) appeal. *Id.*n6

n6 *See also Steel Co.*, 523 U.S. at 94 ("'On every writ of error or appeal, the first and fundamental question is that of jurisdiction'" (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 44 L. Ed. 842, 20 S. Ct. 690 (1900))). Although there is a limited exception for suits in which the class certification issues are "logically antecedent to the existence of any Article III issues," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997); *accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 144 L. Ed. 2d 715, 119 S. Ct. 2295 (1999) (citations omitted), this exception is not applicable here. In the instant case, in contrast to *Ortiz* and *Amchem*, the standing question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue. Nor are we precluded from addressing standing by the fact that the district court did not discuss it. "Because 'standing is a jurisdictional requirement, [it] may always be addressed for the first time on appeal.'" *Public Citizen*, 274 F.3d at 217 (quoting *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 555 n.22 (5th Cir. 1996)).

[*10]

Standing is a question of law that we review de novo. *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). We review for clear error all facts expressly or implicitly found by the district court. *Id.*

B.

To establish an injury in fact, plaintiffs must demonstrate "an invasion of a legally protected interest which is ... concrete and particularized." *Defenders of Wildlife*, 504 U.S. at 560. Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other

patients were injured by Duract; Rivera would like her money back. The plaintiffs do *not* claim Duract caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users. Instead, they assert that their loss of cash is an "economic injury."

The plaintiffs never define this "economic injury," but, instead, spend most of their brief listing helpful suggestions on how a court could calculate damages. These arguments are relevant (if at all) to redressability, not injury. Merely asking for money does not establish [*11] an injury in fact.

Notably, the wrongs Rivera and the class allege are those suffered by other, non-class member patients. The plaintiffs claim that Wyeth violated the implied warranty of merchantability by selling a defective drug, but then aver that the drug was not defective as to them. Similarly, the plaintiffs claim Wyeth violated the DTPA by failing to issue warnings sufficient to advise injured users, but then concede they were not among the injured. Such wrongs cannot constitute an injury in fact.

"The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972); accord *Defenders of Wildlife*, 504 U.S. at 563. It is not enough that Wyeth may have violated a legal duty owed to some other patients; the plaintiffs must show that Wyeth violated a legal duty owed to them. "What courts require ... is that the injury be personal." *Bertulli*, 242 F.3d at 295.

The plaintiffs' most plausible argument for finding they have suffered "invasion of a legally protected [*12] interest" is their claim they were denied "the benefit of the bargain" due to them under general, contract law type principles. The plaintiffs do not actually argue breach of contract -- likely a smart decision, given that there was no contract. Instead, they invoke *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001), a bold move given that *Coghlan* explicitly distinguishes valid, contract law suits from the "no-injury products liability law suit" plaintiffs bring.

The *Coghlan* plaintiffs had contracted to buy an all fiberglass boat but instead received a less valuable, wood-fiberglass hybrid. They sued for breach of contract, requesting damages equal to the difference in value between what they were promised (an all fiberglass boat) and what they received (the fiberglass-wood hybrid). In holding that the Coghlans had suffered an injury, we explained that

the key distinction between [the Coghlans'] case and a "no-injury" products liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: the Coghlans assert they were promised one thing but were given a different, less valuable [*13] thing. The core allegation in a no-injury product liability class action is ... the defendant produced or sold a defective product and/or failed to warn of the product's dangers.

*240 F.3d at 455 n.4.*

Even if we were to ignore the fact that plaintiffs have no contract, the general principles they invoke do not help them. By plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that -- the benefit of her bargain. "An award of damages for breach of contract is supposed to place the injured party as nearly as possible in the position that he would have occupied had the defaulting party performed the contract." 240 F.3d at 453-54. Duract worked. Had Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now. Accordingly, they cannot have a legally protected contract interest.

The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege -- failure to warn and sale of a defective product -- are products liability claims. 240 F.3d at 455 n.4. Yet, the damages they [*14] assert -- benefit of the bargain, out of pocket expenditures -- are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact.

These are not merely pleading exercises; Article III's standing requirements assure that "'the dispute ... will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'" *Sierra Club*, 405 U.S. at 732 (quoting *Flast v. Cohen*, 392 U.S. 83, 101, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968)). Courts should not be deciding legal questions in the abstract, but based on a fully developed factual record.

By definition, Rivera's no-injury "damages" will not vary with Wyeth's degree of negligence or the drug's propensity for harm. Rivera has not even indicated what additional warnings Wyeth should have included or which of Duract's defects Wyeth should have cured -- perhaps because as one not injured by the drugs, she does not know.

C.

In addition to their failure to demonstrate [*15] an injury in fact, plaintiffs fail to plead facts essential to establish causation. Standing requires "a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Defenders of Wildlife*, 504 U.S. at 560 (internal quotations and alterations omitted).

The facts provide plaintiffs an additional hurdle in demonstrating causation. Duract was a prescription drug; before a patient could take Duract, his physician had to make an independent medical judgment to prescribe it. n7 Where an element of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict ... it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation." 504 U.S. at 562. Thus, to establish causation, plaintiffs must show that had Wyeth acted "lawfully" (produced a safer drug or provided [*16] more extensive warnings), the physicians would not have prescribed -- *and* the plaintiffs would not have purchased -- Duract.

n7 *See Burton v. Am. Home Prods. (In re Nor plant Contraceptive Prods. Liability Litig.)*, 955 F. Supp. 700, 705 (noting the applicability of the "learned intermediary doctrine"), *aff'd*, 165 F.3d 374 (5th Cir. 1999).

Rivera and the class do not even assert this conclusion, much less adduce any facts supporting it. One logically could assume that if Duract had been safer, physicians would have been more willing to prescribe it. And even if Wyeth had issued more warnings (Plaintiffs do not indicate which warnings were missing.), plaintiffs never assert that they were part of a risk group that should have been warned. To find causation, we would have to infer the absurd -- for example, that an extra warning, though inapplicable to Rivera, might have scared her and her doctor from Duract. Such reasoning is too speculative to establish Article III standing. [*17] n8

n8 *See Defenders of Wildlife*, 504 U.S. at 566 (stating that "standing is not an ingenious academic exercise in the conceivable" (internal quotations and citation omitted)).

Because this suit does not present a justiciable case or controversy under Article III, we do not reach the class certification question and intimate no view on its merits. We REVERSE and RENDER a judgment of dismissal.