70

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 9 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JOEL FLORES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED § § § § | |
| VS. § | C.A. NO. B-00-53 |
| § § CERTUS HEALTHCARE, L.L.C. § NOVOPHARM LIMITED, DAVID § RODRIGUEZ, DR. ASHOK K. GUMBHIR § NOVOPHARM HOLDINGS, INC. § | |

## CERTUS HEALTHCARE, L.L.C.'s NOTICE OF SUPPLEMENTAL AUTHORITIES

TO THE HONORABLE JUDGE OF SAID COURT:

On Friday, while this Court was holding its hearing regarding Class Certification in this Civil Action, the Fifth Circuit Court of Appeals was issuing its opinion in *Rivera v. Wyeth-Ayerst Labs*, 2002 U.S.App., LEXIS 2411 (February 15, 2002). Together with *Bertulli*, the *Rivera* case brackets the question of when a Plaintiff has suffered an injury in fact sufficient to satisfy the standing requirements of the United States Constitution.

*Rivera's* class was defined as all patients who took Defendant's drug, Duract, "but suffered no physical or emotional injury." *Id.*, see attached at Page 2 of 7. Since the *Rivera* class excluded all of the patients who had actually had an adverse effect from the drug, the Appellate Court found that no class members had suffered injury in fact as a matter of definition, and the entire case was dismissed.

Notice of Supplemental Authorities
rom\motions\21984\not.author.

Page 1

In the case of *Flores v. Certus*, the Plaintiffs have included in their class both individuals who suffered some harm in having to shop around for providers who would accept their Certus insurance, and other HMO members who, either never had a claim, or always had everything paid in a timely fashion, such as Mrs. Blount.

Since the District Court would be burdened with making an individual inquiry as to whether or not each contended class member had suffered an injury in fact, the individual issues predominate over the class issues and the appropriate remedy by this Court is to refuse to certify the class and to dismiss Mrs. Blount, but not Mr. Flores, who said he had to travel to several pharmacies before HEB took his Certus card for the pharmaceuticals but not the durable medical device.

The *Rivera* case is a product liability case seeking the loss of the benefit of a bargain in that Duract was not a perfectly safe drug and was, therefore, worth less than a perfectly safe drug would have been. The Court points out that the class did not purchase the drug from the manufacturer, and the case was therefore, not a contract case.

In *Flores v. Certus*, the class members did purchase their HMO membership from Certus. The *Rivera* court properly points out that even under these circumstances, there is no injury in fact because the purpose of contract damages is to place the injured party in the position that they would have been in had the contract been fulfilled. For the many HMO members who either never had a claim during their policy period, or had all of their claims paid, such as Ms. Blount, they received the benefit of the bargain. They received everything

that they were supposed to receive. They have no injury in fact. See attached at Page 6 of 7.

The *Rivera* Court cites *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449(5th Cir. 2001). In that case the Court reviews Texas and Florida law relating to allowable damage theories in product cases and contract cases. In the *Coghlan* case, the seller represented that the purchasers were getting all fiberglass boats. In fact, they got boats that were made of wood and fiberglass. The Court points out that contract damages are supposed to put the injured parties as nearly as possible in the position that they would have occupied "had the defaulting party performed the contract." In the *Coghlan* case, that meant the Court should determine the difference between an all-fiberglass boat and a fiberglass and wood boat. In the present case, the HMO membership has no inherent value, as would real or personal property. It is a contract that entitles the purchaser to certain rights. In this case, the members have the right to receive certain payments for their medical care from physicians and healthcare providers who were participating with Certus. Those HMO members who either never had healthcare claims, or had all of their claims promptly paid to healthcare providers of their choice, have suffered no injury in fact under the *Coghlan* case or under the *Rivera* case.

Respectfully Submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 W. Price Road, Suite 9
Brownsville, Texas 78520
TEL/ (956) 542-5666
FAX/ (956) 542-0016

By: _____
JEFFREY D. ROERIG
State Bar # 17161700
Federal I.D. No. 1503
ATTORNEY FOR DEFENDANT, CERTUS HEALTHCARE, L.L.C.,

### CERTIFICATE OF SERVICE

I, Jeffrey Roerig, certify that a true and correct copy of the foregoing has been forwarded on the 19th day of February, 2002, via First Class Mail, to the Attorneys of Record, as follows:

Mr. Michael R. Cowen
**MICHAEL R. COWEN, P.C.**
765 E. 7th Street, Suite A
Brownsville, TX  78520

Mr. John Ventura
**LAW OFFICES OF JOHN VENTURA, P.C.**
62 E. Price Road
Brownsville, TX  78521

Mr. Norton A. Colvin, Jr.
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 E. Van Buren Street
Brownsville, Texas 78520

                    Mr. John R. Wallace
        **WALLACE, CREECH & SARDA, L.L.P.**
                    P. O. Box 12085
                   Raleigh, NC  27605

_/s/ Jeffrey D. Roerig_
_____
Jeffrey D. Roerig

Source: **My Sources** > **Federal Legal - U.S.** > **Circuit Court Cases - By Circuit** > **US Court of Appeals Cases - 5th Circuit**

Terms: **standing w/p "injury in fact"** (Edit Search)

✓ Select for FOCUS™ or Delivery

*2002 U.S. App. LEXIS 2411, ***

ELIZABETH RIVERA; ARKANSAS CARPENTERS HEALTH AND WELFARE FUND, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, Plaintiffs-Appellees, versus WYETH-AYERST LABORATORIES, A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION; AMERICAN HOME PRODUCTS CORPORATION, Defendants-Appellants.

No. 01-40122

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

2002 U.S. App. LEXIS 2411

February 15, 2002, Decided

**PRIOR HISTORY:** [*1] Appeal from the United States District Court for the Southern District of Texas.

Rivera v. Wyeth-Ayerst Lab., 197 F.R.D. 584, 2000 U.S. Dist. LEXIS 17630 (S.D. Tex. 2000)

**DISPOSITION:** Reversed and dismissed.

**CORE TERMS:** patient, warning, discovery, class certification, contract law, causation, liver, user, no-injury, package, insert, products liability, breach of contract, product liability, quotations, bargain, safer, justiciable case, pain killer, certification, prescribed, promised, vacate, common understanding, protected interest, motion to dismiss, causal connection, defective product, legal duty, logically

**JUDGES:** Before SMITH and EMILIO M. GARZA, Circuit Judges, and CUMMINGS, * District Judge.

* District Judge of the Northern District of Texas, sitting by designation.

**OPINIONBY:** JERRY E. SMITH

**OPINION:**

JERRY E. SMITH, Circuit Judge:

Pursuant to FED. R. CIV. P. 23(f), defendants Wyeth-Ayerst Laboratories ("Wyeth") and American Home Products Corporation appeal the certification of a nationwide class of drug purchasers and their insurance companies. Because we conclude that this suit does not present a justiciable case or controversy under Article III of the Constitution, we reverse and render a judgment of dismissal.

I.

In July 1997, Wyeth began distributing Duract, a non-steroidal anti-inflammatory drug ("NSAID") prescribed for short-term management of acute pain. Although all NSAID's carry certain risks of liver and gastrointestinal damage, clinical trials revealed that Duract had additional negative effects. Wyeth included a package insert in each box of Duract detailing these dangers, reporting the results of the clinical trials, recommending Duract be used for only short periods ("generally [*2] less than ten days"), and warning that Duract may not be appropriate for those with preexisting liver conditions. The Food and Drug Administration ("FDA") approved Duract, its labeling, and its package insert.

In December 1997, Wyeth received three reports of liver failure by patients who had taken Duract for long-term relief without undergoing liver testing. In February 1998, after receiving FDA approval, Wyeth issued a new, revised package insert reporting these cases of liver failure and reemphasizing that Duract was intended "only for the short term (10 days or less)." After receiving new reports of liver failure among long term users, Wyeth voluntarily withdrew Duract from the market in June 1998.

Wyeth explained that of the twelve patients injured by Duract, eleven had taken the drug for over ten days, and one had preexisting liver disease. Wyeth stated that because no change in Duract's package insert could guarantee physicians would stop prescribing the drug for long-term use, it was withdrawing Duract from the market. Wyeth established a program to refund Duract users for any unused portion of their prescription.

II.

Elizabeth Rivera and the Arkansas Carpenters Health [*3] and Welfare Fund (the "Fund") filed this nationwide class action suit. Rivera seeks to represent all patients who were prescribed, had purchased, and had ingested Duract but suffered *no* physical or emotional n1 injury. In fact, the class explicitly excludes any patients who have been injured by Duract. Nor do plaintiffs claim Duract was ineffective as a pain killer or has any future health consequences.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The plaintiffs have never alleged -- in their original complaint, their second amended complaint, or their brief to this court -- that they suffered emotional distress. Yet, in its November 8 order denying Wyeth's motion to dismiss, the district court based its holding on this fact. It concluded that "even if the medicine does not cause physical injury, the user may spend months or years worrying about potential illness caused by the medicine," and this stated a claim under Texas law. _Rivera v. Wyeth-Ayerst Labs., 121 F. Supp. 2d 614, 619 (S.D. Tex. 2000)._ To eliminate all confusion, the plaintiffs repudiated the district court's claim in their brief to this court.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*4]

Although the class includes citizens of all fifty states and the District of Columbia, plaintiffs state their complaint under Texas law. They allege that Wyeth failed to warn of Duract's dangers and that Duract was defective in violation of (1) the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE §§ 17.50, 17.46 (Vernon Supp. 1998), (2) the implied warranty of merchantability, TEX. BUS. & COM. CODE § 2.314(a) (Vernon 1994), and (3) common law unjust enrichment, and thus Wyeth owes them economic damages. The Fund asserts a derivative claim: It seeks to represent all third-party payers who have reimbursed these patients for Duract.

Wyeth asked the district court to deny the motion to certify the class on the pleadings or, in the alternative, to allow class discovery and an evidentiary hearing. The plaintiffs agreed that discovery would be appropriate; accordingly, on November 28, 2000, the parties submitted a proposed discovery plan to the district court. That same day, despite the plaintiffs' concession in favor of discovery, the court denied Wyeth's request for discovery and an evidentiary hearing and certified the class under FED. R. CIV. P. 23(b). n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 *Rivera v. Wyeth-Ayerst Labs., 197 F.R.D. 584 (S.D. Tex. 2000).*

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*5]

Even though FED. R. CIV. P. 26(d) prohibits discovery and evidentiary hearings in advance of the pretrial conference, and the pretrial conference had been held only thirteen days earlier, the district court rebuked Wyeth for not having pursued discovery over the past four months and decided it could certify the class without any discovery. Accordingly, although the record contained no evidence on Rivera's purchase or use of Duract or on the Fund's reimbursement of Duract patients, the court held that the claims of Rivera and the Fund "appear to be typical" of the class members.

Similarly, the district court dismissed Wyeth's argument that variations in the fifty states' laws would swamp any common issues. There was no need to analyze different states' laws or even to decide which laws applied, the district court held, because plaintiffs had promised eventually to provide a workable subclass plan that would solve any problems.

Wyeth timely filed, and this court granted, an application for interlocutory appeal pursuant to rule 23(f). Apparently estimating that their odds on appeal were bleak, plaintiffs moved the district court to issue an order "expressing the court's intent to [*6] vacate the class certification order and to reconsider the class certification issue upon remand." The plaintiffs noted that the district court had erred in failing to conduct a choice-of-law analysis and failing to demand plaintiffs submit a subclass plan before certification; plaintiffs requested the court to assure that it would do so on remand; nonetheless, the court denied the motion on the stated ground of lack of jurisdiction.

III.

Rarely on appeal does the appellee concede that the district court's order is so fatally flawed that it cannot stand. Yet, at oral argument, the attorney for Rivera and the Fund did just that, admitting that only a "feeling of obligation to support the district court order" moved him to argue when it was "crystal clear" we would have to vacate and remand.n3 Counsel was only half right, however: Because this suit does not even present a justiciable case or controversy under Article III, we vacate and render a judgment of dismissal.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 We are sympathetic to counsel's plight on appeal, and we appreciate his candor, in his role as an officer of the court, in acknowledging the weakness of the position thrust on him and his clients by the district court.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*7]

IV.

Article III limits the judicial power of the federal courts to "Cases" and "Controversies" but

does not define those terms. Instead, "the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).* An "essential and unchanging part" of this common understanding is the doctrine of standing. *504 U.S. at 560.*

The "irreducible constitutional minimum of **standing** contains three elements": "The plaintiff must have suffered an **injury in fact**," "there must be a causal connection between the injury and the conduct complained of," and "it must be likely . . . that the injury will be redressed by a favorable decision." *504 U.S. at 560-61* (internal quotations omitted).n4 The plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements. *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998).* Failure to establish any one deprives [*8] the federal courts of jurisdiction to hear the suit. *Id.*

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Accord *Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001).*

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

The district court erred by not demanding such a showing before it certified the class. n5 Had it done so, it would have found that plaintiffs had demonstrated neither injury nor causation.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n5 Although Wyeth argued that plaintiffs lacked standing, the district court refused to address the question, insisting it had done so in its November 8 denial of a motion to dismiss. *Rivera v. Wyeth-Ayerst Labs., 197 F.R.D. 584, 588 (S.D. Tex. 2000).* The November 8 order, however, does not mention standing. *Rivera v. Wyeth-Ayerst Labs., 121 F. Supp. 2d 614 (S.D. Tex. 2000).*

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

A.

Even though the certification inquiry is more straightforward, we must decide standing first, [*9] because it determines the court's fundamental power even to hear the suit. *523 U.S. at 94.* The procedural posture of this case does not alter our conclusion.

Though rule 23(f) allows a party to appeal only the issue of class certification, "standing is an inherent prerequisite to the class certification inquiry." *Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 (5th Cir. 2001).* Accordingly, standing may -- indeed must -- be addressed even under the limits of a rule 23(f) appeal. *Id.*n6

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n6See also *Steel Co., 523 U.S. at 94* ("'On every writ of error or appeal, the first and fundamental question is that of jurisdiction'" (quoting *Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453, 44 L. Ed. 842, 20 S. Ct. 690 (1900))).* Although there is a limited exception for suits in which the class certification issues are "logically antecedent to the existence of any Article III issues," *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997); accord Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 144 L. Ed. 2d 715, 119 S. Ct. 2295 (1999)* (citations omitted), this exception is not

applicable here. In the instant case, in contrast to *Ortiz* and *Amchem*, the standing question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue. Nor are we precluded from addressing standing by the fact that the district court did not discuss it. "Because 'standing is a jurisdictional requirement, [it] may always be addressed for the first time on appeal.'" *Public Citizen*, 274 F.3d at 217 (quoting *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 555 n.22 (5th Cir. 1996)).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - [*10]

Standing is a question of law that we review de novo. *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). We review for clear error all facts expressly or impliedly found by the district court. *Id.*

B.

To establish an injury in fact, plaintiffs must demonstrate "an invasion of a legally protected interest which is . . . concrete and particularized." *Defenders of Wildlife*, 504 U.S. at 560. Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back. The plaintiffs do *not* claim Duract caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users. Instead, they assert that their loss of cash is an "economic injury."

The plaintiffs never define this "economic injury," but, instead, spend most of their brief listing helpful suggestions on how a court could calculate damages. These arguments are relevant (if at all) to redressability, not injury. Merely asking for money does not establish [*11] an injury in fact.

Notably, the wrongs Rivera and the class allege are those suffered by other, non-class member patients. The plaintiffs claim that Wyeth violated the implied warranty of merchantability by selling a defective drug, but then aver that the drug was not defective as to them. Similarly, the plaintiffs claim Wyeth violated the DTPA by failing to issue warnings sufficient to advise injured users, but then concede they were not among the injured. Such wrongs cannot constitute an injury in fact.

"The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972); accord *Defenders of Wildlife*, 504 U.S. at 563. It is not enough that Wyeth may have violated a legal duty owed to some other patients; the plaintiffs must show that Wyeth violated a legal duty owed to them. "What courts require . . . is that the injury be personal." *Bertulli*, 242 F.3d at 295.

The plaintiffs' most plausible argument for finding they have suffered "invasion of a legally protected [*12] interest" is their claim they were denied "the benefit of the bargain" due to them under general, contract law type principles. The plaintiffs do not actually argue breach of contract -- likely a smart decision, given that there was no contract. Instead, they invoke *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001), a bold move given that *Coghlan* explicitly distinguishes valid, contract law suits from the "no-injury products liability law suit" plaintiffs bring.

The *Coghlan* plaintiffs had contracted to buy an all fiberglass boat but instead received a less valuable, wood-fiberglass hybrid. They sued for breach of contract, requesting damages equal to the difference in value between what they were promised (an all fiberglass boat)

and what they received (the fiberglass-wood hybrid). In holding that the Coghlans had suffered an injury, we explained that

> the key distinction between [the Coghlans'] case and a "no-injury" products liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: the Coghlans assert they were promised one thing but were given a different, less valuable [*13] thing. The core allegation in a no-injury product liability class action is . . . the defendant produced or sold a defective product and/or failed to warn of the product's dangers.

240 F.3d at 455 n.4.

Even if we were to ignore the fact that plaintiffs have no contract, the general principles they invoke do not help them. By plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that -- the benefit of her bargain. "An award of damages for breach of contract is supposed to place the injured party as nearly as possible in the position that he would have occupied had the defaulting party performed the contract." 240 F.3d at 453-54. Duract worked. Had Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now. Accordingly, they cannot have a legally protected contract interest.

The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege -- failure to warn and sale of a defective product -- are products liability claims. 240 F.3d at 455 n.4. Yet, the damages they [*14] assert -- benefit of the bargain, out of pocket expenditures -- are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact.

These are not merely pleading exercises; Article III's standing requirements assure that "the dispute . . . will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'" Sierra Club, 405 U.S. at 732 (quoting Flast v. Cohen, 392 U.S. 83, 101, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968)). Courts should not be deciding legal questions in the abstract, but based on a fully developed factual record.

By definition, Rivera's no-injury "damages" will not vary with Wyeth's degree of negligence or the drug's propensity for harm. Rivera has not even indicated what additional warnings Wyeth should have included or which of Duract's defects Wyeth should have cured -- perhaps because as one not injured by the drugs, she does not know.

C.

In addition to their failure to demonstrate [*15] an **injury in fact,** plaintiffs fail to plead facts essential to establish causation. **Standing** requires "a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Defenders of Wildlife, 504 U.S. at 560 (internal quotations and alterations omitted).

The facts provide plaintiffs an additional hurdle in demonstrating causation. Duract was a prescription drug; before a patient could take Duract, his physician had to make an independent medical judgment to prescribe it.n7 Where an element of standing "depends on the unfettered choices made by independent actors not before the courts and whose

exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation." 504 U.S. at 562. Thus, to establish causation, plaintiffs must show that had Wyeth acted "lawfully" (produced a safer drug or provided [*16] more extensive warnings), the physicians would not have prescribed -- and the plaintiffs would not have purchased -- Duract.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n7 See Burton v. Am. Home Prods. (In re Norplant Contraceptive Prods. Liability Litig.), 955 F. Supp. 700, 703 (noting the applicability of the "learned intermediary doctrine"), aff'd, 165 F.3d 374 (5th Cir. 1999).

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Rivera and the class do not even assert this conclusion, much less adduce any facts supporting it. One logically could assume that if Duract had been safer, physicians would have been more willing to prescribe it. And even if Wyeth had issued more warnings (Plaintiffs do not indicate which warnings were missing.), plaintiffs never assert that they were part of a risk group that should have been warned. To find causation, we would have to infer the absurd -- for example, that an extra warning, though inapplicable to Rivera, might have scared her and her doctor from Duract. Such reasoning is too speculative to establish Article III standing. [*17] n8

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n8 See Defenders of Wildlife, 504 U.S. at 566 (stating that "standing is not an ingenious academic exercise in the conceivable" (internal quotations and citation omitted)).

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Because this suit does not present a justiciable case or controversy under Article III, we do not reach the class certification question and intimate no view on its merits. We REVERSE and RENDER a judgment of dismissal.

Source: **My Sources** > Federal Legal - U S > Circuit Court Cases - By Circuit > **US Court of Appeals Cases - 5th Circuit**
Terms: **standing w/p "injury in fact"** (Edit Search)
View: Full
Date/Time: Monday, February 18, 2002 - 3:43 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.