IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

MAR 15 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JOEL FLORES, INDIVIDUALLY | § | |
| AND ON BEHALF OF ALL | § | |
| OTHERS SIMILARLY SITUATED, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-053 |
| | § | |
| CERTUS HEALTHCARE, L.L.C., | § | |
| NOVOPHARM LIMITED, and | § | |
| NOVOPHARM HOLDINGS, INC., | § | |
| Defendants. | § | |

## FINAL ORDER

Pending before the Court is plaintiff's Motion for Class Certification (Docket No. 51). The defendants have filed briefs in opposition (Docket Nos. 62, 63) to which the plaintiff and the intervenor have responded (Docket No. 67).

### BACKGROUND[1]

Joel Flores filed this lawsuit against Certus Healthcare, L.L.C. ("Certus"), Novopharm Limited ("Novopharm"), and Novopharm Holdings, Inc. ("Novopharm Holdings"), (collectively "Defendants"), alleging the following causes of action: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COMM. CODE § 17.50, (3) violations under article 21.21 of the Texas Insurance Code, (4) breach of contract, (5) common law fraud, (6) negligent misrepresentation, and (7) breach of contract under a third-party beneficiary theory. Monica Blount

---

[1] Unless otherwise indicated, the facts are derived from the Plaintiff Joel Flores's First Amended Complaint.

filed an Original Complaint in Intervention (Docket No. 64) and adopted by reference the allegations Flores raises in his First Amended Complaint (Docket No. 50). Flores and Blount (collectively "Plaintiffs") now seek to certify a Class consisting of "all policyholders, beneficiaries and members of any health insurance plan or HMO from Certus Healthcare, L.L.C. from May 29, 1998 to November 2, 1999." (Docket No. 51). The Plaintiffs were among those who owned individual health insurance plans from Certus during this relevant time period.[2] The following is a recitation of the facts that give rise to their claims:

Certus was a health maintenance organization (HMO) that was formed in 1995 in order to provide health insurance plans to individuals, employers, and government entities in the South Texas region. Since its formation, Novopharm Holdings, a wholly-owned company of Novopharm, was the majority or sole shareholder of Certus, solely responsible for ensuring that the HMO was adequately funded. Certus's Operating Agreement provided that Novopharm would invest $1.4 million in Certus, while a co-investor, Total Health Care Plans, Inc., ("THCP"), would contribute $150,000. The Operating Agreement granted Novopharm a 51% equity ownership in Certus. Novopharm could also, but was not required to, make an additional $1.1 million in contributions. Novopharm later assigned its interest in Certus to Novopharm Holdings.

According to the Plaintiffs' First Amended Complaint, "[f]rom the beginning, it was clear that, in order for Certus to operate, Novopharm Holdings would have to fund more than was required by the Contribution and Subscription Agreement. . . . [T]he Texas Department of Insurance would not approve Certus' application to operate as an HMO unless Novopharm agreed to increase its

---

[2] Between May 29, 1998 and November 2, 1999, Certus had over 24,000 members covered under various individual and group plans.

2

funding commitment." (Docket No. 50). Subsequently, Novopharm Holdings and THCP entered into a First Amendment to the Operating Agreement, in which Novopharm Holdings agreed to contribute $3,000,000 to Certus. The Plaintiffs contend that "even this amount was insufficient. . . . Certus began selling policies in October 1996, and very quickly began losing money[.] As a result, Certus had a negative net worth during most of its existence." (Docket No. 50).

By April 1998, the Texas Department of Insurance ("Department"), concerned with Certus's net worth, requested that the parties enter into a Second Amendment to the Operating Agreement, otherwise it would not allow Certus to continue to operate. The Second Amendment required Novopharm Holdings to "make such contributions to [Certus] for the purpose of meeting the minimum anticipated requirements of the HMO and for the purpose of preserving the HMO's viability through the period ending December 31, 1999." (Docket No. 50). According to the Plaintiffs, this meant that "Novopharm was required to provide sufficient funding so that "(1) Certus would not have a negative equity position; and (2) Certus would be current with its obligations to Doctors and Hospitals." (Docket No. 50). The Plaintiffs claim that "[t]he Second Amendment memorialized Novopharm's agreement with the [Department, and the] Plaintiff[s] and the Class were intended third-party beneficiaries of the contract." (Docket No. 50).

The Plaintiffs also aver that on April 29, 1999, the Department placed Certus under administrative oversight due to its "hazardous financial condition." Three months later, the Department increased its monitoring level and placed Certus under supervision. According to the Plaintiffs, the Defendants neither informed the Class that Certus's financial condition was hazardous nor that Certus had been placed under administrative oversight or under supervision. Additionally, Certus distributed a marketing brochure that allegedly led individual and business customers to

believe that Certus had "the financial wherewithal to operate" due to Novopharm's financial backing. The Plaintiffs claim that the statements in the brochure "were false and were designed to create the false impression that Certus had the ability to timely pay claims."

The Plaintiffs maintain that Novopharm did not fulfill its funding obligations, and as a result, Certus was unable to pay medical providers in a timely fashion. They contend that doctors and pharmacies, which were included in Certus's list of approved providers, consequently refused to accept Certus health insurance. In this action, the Plaintiffs seek to recover the difference between the value of the insurance policies they were promised and the value of the insurance policies they allege they actually received.

## DISCUSSION

Although the parties have not addressed it, this court may raise *sua sponte* the issue of standing because it is a jurisdictional requirement. *See Bertulli v. Indep. Ass'n of Continental Pilots*, 242 F.3d 290, 294 (5th Cir. 2001). Standing is the threshold inquiry because it goes to the constitutional power of a federal court to entertain an action. *See Rivera v. Wyeth-Ayerst Laboratories*, __ F.3d __, 2002 WL 230657, *3 (5th Cir. Feb. 15, 2002); *James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001). Standing focuses on the party seeking to get his or her complaint before a federal court and not on the issues he or she wishes to have adjudicated. *See James*, 254 F.3d at 562.

As the Fifth Circuit has held, "[t]his constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by [FED. R. CIV. PROC. Rule] 23," governing class actions. *Bertulli*, 242 F.3d at 294 (quoting *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A 1981)). "A litigant must be a member of the class

4

which he or she seeks to represent at the time the class action is certified by the district court." *Id.* (quoting *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

> [A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A 1981) (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., concurring)). The class representatives must establish the requisite case or controversy between themselves individually and the defendants. If they fail to establish any of the elements of standing, the class representatives may not seek relief on behalf of themselves or any other member of the class. *See id.* at 563 (relying on *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Article III of the United States Constitution requires that a plaintiff have standing in order to bring a justiciable case or controversy in federal court. There are three requirements of Article III standing. "First, the plaintiff must have suffered an 'injury-in-fact' — an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of[.] Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *James*, 254 F.3d at 563 (quoting *United States v. Hays*, 515 U.S. 737, 742-48 (1995)).

A named plaintiff's injury need not be monetary or tangible; even psychological or aesthetic injury is sufficient. *Bertulli*, 242 F.3d at 295. The injury, however, must be *personal*. *See id.* [Emphasis added]. "The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Rivera*, 2002 WL 230657,

at *4. The Plaintiffs' injury claim is that as a result of Novopharm's underfunding of Certus, Certus was unable to pay claims in a timely fashion, and thus, approved medical providers refused to provide treatment. (Docket No. 51). Flores and Blount do not satisfy the "injury-in-fact" requirement; neither of them have suffered the injuries that they claim the Class has suffered.

At his deposition,[3] Flores testified that his son was covered by a Certus plan for about two weeks. The policy became effective on February 15, 1999, and on February 22, Flores took his son to Dr. Montalvo. Certus paid the medical charges incurred from the visit to Dr. Montalvo's office. Dr. Montalvo prescribed two drugs and a delivery device called a nebulizer, which is available without a prescription from a doctor. Under the terms of Flores's insurance policy, a "drug . . . or device which can be purchased without a prescription" was excluded from coverage. (Deposition of Joel Flores, Exhibit No. 17). Flores attempted to fill the prescription at Autrey's Pharmacy, but Autrey's did not accept Certus Insurance. Plaintiff then went to an H-E-B grocery store pharmacy. H-E-B filled his prescription, except the nebulizer. Flores received the full benefit of his policy with Certus. Dr. Montalvo did not refuse to treat Flores's son on account of Certus's alleged underfunding, and Certus did not fail to pay Dr. Montalvo for his services. H-E-B filled Flores's prescription according to the terms of Flores's insurance policy. Flores disputes that he received the policy for which he bargained because H-E-B refused to fill the prescription for the nebulizer; however, Flores's policy clearly excluded medical devices and drugs that a policyholder could obtain without a prescription.[4] Flores has suffered no cognizable injury that is comparable to the injuries

---

[3] See Flores Deposition, p. 147-149.
[4] Flores claims an injury that is solely personal to him and not relevant to the injuries he alleges the Class suffered. According to Flores's deposition testimony, the insurance agent who sold him the Certus policy promised him that his insurance plan covered medical supplies such as the nebulizer, and Flores claims he relied on the agent's representations in purchasing Certus Insurance. After Flores purchased the insurance, he testified that he did not read the policy to find out the extent of his coverage. Under basic principles of contract law, the final written contract

allegedly suffered by the Class.

Similarly, Blount's asserted injury claim is not similar to the Class's alleged injury claim.[5] Blount testified at her deposition that she purchased Certus coverage for her two daughters. Blount was satisfied enough with Certus that she renewed the coverage after the first year. During the entire period of coverage, she testified her children were seen and treated by the physicians of her choice, with the charges paid by Certus. Her children were never denied any services. Although Blount stated that she was turned away from a Walgreen's pharmacy and had to go to an H-E-B pharmacy, Walgreen's was not on Certus's list of approved providers. Blount voluntarily cancelled her policy after being denied no benefits whatsoever. She explained that she switched to another carrier after her daughter's doctor, Dr. Thelma Gonzalez, allegedly called her and told her that Certus was not paying. Nonetheless, at that time, Certus had fully paid all the medical bills that Blount had incurred from visits to Dr. Gonzalez's office. Blount testified she did not know whether other patients of Dr. Gonzalez had Certus insurance, and she cancelled the policy without determining whether Certus had in fact paid Dr. Gonzalez for her medical services.

Neither of these Plaintiffs have any demonstrable injury which one would expect to find among class members as a result of Novopharm's failure to adequately fund Certus. During the time Flores and Blount had Certus insurance, their medical bills fully paid in a timely fashion, and their prescriptions were filled according to the terms of their Certus policies. They have failed to establish that they have suffered the injuries that they claim the Class has suffered. Neither Flores nor Blount are members of the Class that they seek to represent, and consequently, they may not seek relief on

---

memorializes an agreement between two parties, and evidence of prior oral agreements may not be used to contradict the terms of the valid written contract.
    [5]*See* Blount Deposition, pp. 55-56, 76-81.

behalf of themselves or any other member of the Class.

Accordingly, IT IS **ORDERED** that this action be **DISMISSED** in its entirety for failure to present a justiciable case or controversy under Article III of the United States Constitution.

DONE at Brownsville, Texas, this 14th day of March, 2002.

				John Wm. Black
				United States Magistrate Judge